R. HUDSON BURR, NEWTON A. BLITCH AND ROYAL C. DUNN, AS RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Appellants,* v. FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Appellee.*

Opinion filed March 18, 1919.

1. In determining the legality and effect of a statutory regulation the Court should ascertain the legislative intent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to rather than violate applicable provisions and principles of the State and Federal Constitutions, since it must be assumed that the Legislature intended the enactment to comport with the fundamental law. ·

2. A statute must be so construed, if fairly possible, as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.

3.  Chapter 7320, Acts of 1917, construed with reference to con-
trolling provisions of organic law, does not require a rail-
road common carrier to render for the line haul charge an
extra and added service for switching in receiving or de-
livering cars on its line or any side track or spur track con-
nected therewith, when such extra or added service costs
more than the ordinary or substituted service rendered to
the public generally and is rendered under special circum-
stances, not applicable to other patrons, and the cost of the
extra service is not included in the charge for the line haul.

An Appeal from the Circuit Court for Leon County;
E. C. Love, Judge.

Order affirmed.

*Dozier A. DeVane, for Appellants;*

*W. A. Blount, for Appellee.*

WHITFIELD, J.—The railroad company filed in the
Circuit Court for Leon County the following bill of com-
plaint:

"1.    That the complainant is, and has been for more
than twenty years, a corporation, chartered, organized
and doing business under the laws of and in the state of
Florida;

"2.    That the defendants are residents of the County
of Leon in the State of Florida, are the members of and
constitute the Railroad Commission of the State of
Florida, with the powers and duties validly conferred
upon them by the constitution and laws of the said State,
and by the said constitution are required to keep their
offices at the seat of government of said State, to-wit:—
in the City of Tallahassee, in the said County of Leon;

"3. That the complainant is a railroad corporation, having and operating a main line of railway from Jacksonville to Key West, in said State, and several extensions thereof, all in said State; and in said operation, transports, and has transported for more than twenty years, for hire, passengers and freight from point to point in said State, and passengers and freight in interstate commerce between points in said State and points in divers other States of the United States, and in foreign commerce between points in said State and in other States and points in foreign countries;

"4. That in the conduct of the said business, both intrastate and interstate, it is, and has been for more than twenty years, necessary for the complainant to deliver to consignees along its line loaded cars for unloading by consignees and removal by complainant, and to shippers along its line, empty cars to be loaded by the shipper and removed by the complainant, and for the purpose of making delivery and removal of said cars, loaded and empty, the complainant has, at all the points where such delivery and removal are required, constructed and has, and has had, in use and operation for more than twenty years, public team or delivery tracks, upon which it places cars for loading and unloading, as aforesaid, without any charge for such service, other thant that embraced in the charge for the line haul of such cars, and without discrimination in any respect between the persons receiving such delivery and removal;

"5. That, however, at divers of said points, more than seventy in number, shippers and consignees have, for their own convenience, and the saving of cost to themselves, of draying carloads of freight to and from complainant's public team tracks, required and received a

service from the complainant distinct from and additional to that of ordinary delivery at and removal from the said delivery or public team tracks. This service is and has been at all times rendered by the complainant at the request of the various shippers and consignees in three distinct ways, to-wit:

"(a) An industry at some distance from the complainant's line may request the complainant to construct a spur or side track directly from the main line to the industry's yard. The complainant thereupon, and upon the customer's executing a contract in writing with complainant, constructs the track. The shipper or consignee (both herein called the customer, unless a distinction be required to be made between them), bearing the cost of the road-bed, ballast and ties, including labor, and the complainant paying for the rails and the cost of laying them, the customer, prior to the construction of such track and the use and operation thereof, agreeing by said contract, in addition to pay a specified annual rental representing the estimated annual cost to the complainant of maintaining the private track. In most instances the land on which the private track is laid belongs to the complainant, but the rental is charged even if the track is constructed on land owned by the customer. Although the said contract usually contains a clause providing for the joint use of the spur by the customer and the complainant, this is inserted only to meet the complainant's possible emergencies, and the practical effect of the contract is, and has always been, to give the customer the exclusive use of the spur, or of that part of it adjoining his land. If several industries are on the same spur, each has the exclusive use of the portion of the track adjoining its own loading or unloading platform, the maintenance cost being equitably apportioned among

them. In addition to the rental above mentioned, the customer, by the contract aforesaid, agrees to pay a further rental of $2.00 for each loaded car in or out for said customer at said location, this charge being carried in the complainant's tariff filed with the Interstate Commerce Commission with other rates and charges for services performed, and the said charge has been at all times intended and agreed upon between the complainant and the customer, as compensation for the switching or spotting service included in and constituting the delivery and removal aforesaid.

"(b) A customer may desire to construct a warehouse or other structure on property immediately adjoining the private spur already constructed for other customers. Usually he finds it necessary to build at least his loading platform on the complainant's right of way. A contract similar to the one above mentioned is entered into by the customer and the complainant, whereby the latter 'leases' to the former such land as the customer may need, together with the right to use that portion of the spur which adjoins his loading platform. In this case, the customer pays no part of the original cost of constructing the track, but is required to pay a nominal rental, usually $10.00. As further rental, he agrees by said contract, entered into between him and the complainant, to pay the spotting charge of $2.00 per car.

"(c) A customer may desire to construct a warehouse or other structure on the property immediately adjoining one of the complainant's public team or delivery tracks, with the privilege of constructing its loading or unloading platform on the complainant's right of way. In this instance, it is not practicable, because of the public nature of the track, to give the customer the

exclusive use of any portion of it. He is, however, given the right to demand, upon payment of the $2.00 charge, that cars be spotted directly in front of his loading or unloading platform. This service differs from the ordinary team track delivery, where the complainant switches cars upon a team track in any way that bests suits its convenience, without paying particular attention to their exact location. The complainant may be, and frequently is, inconvenienced by the necessity of keeping a car spotted at a particular location. While such a car is being loaded or unloaded, there may be other cars on either side of it which must be removed, and several switching operations are necessary to remove them, after which the spotted car must be returned to the exact location from which it was taken. The customer whose warehouse or other building is thus located on property immediately adjoining the public team or delivery track, pays no rental for the use of the track and no part of the cost of maintaining it, but he must pay the spotting charges, and if his warehouse or platform is constructed on the complainant's land, or encroaches on the complainant's right of way, he must pay for his occupancy a rental that is nominal in amount, except where land values are high.

"The classes of service mentioned above are and have always been, for twenty years or more, performed under contract between the complainant and the customer, and said contracts embrace, and always have, for the time aforesaid, embraced, the payment by the customer of the charges aforesaid. The said private tracks are in all instances within the switching limits of the complainant, its switching limits being fixed by rule of the defendants as not less than three miles.

"6.   That the cost to the complainant is greater for the service mentioned than for an ordinary delivery to and removal from the public team or delivery track, the average additional cost per car being about $2.50, and the total amount received by complainants from the performance of such additional service is less than the cost to the complainant of said service; that the cost of said additional service exceeds per year $50,000.00, which sum would be lost to the complainant if the said act be enforced and the complainant be required to render the said service without compensation.

"That the rendition of the said service adds greatly to the complexity of the switching operations of the complainant and to the time consumed in switching and in the operation of its trains, and at some points, requires additional motive power.

"That the said charge of $2.00 for the additional service is not excessive for the said service and that the defendant has so admitted in a proceeding before the Interstate Commerce Commission hereinafter referred to.

"That the said service is of great value to said customers, and that the said $2.00 switching charge is in most cases less than the cost to the customer of draying carloads of freight to and from the said public team or delivery track;

"That the charges for the intrastate line haul upon the said cars so switched have been approved by the defendants, and are in all cases reasonable, and not fixed by complainant to include, and do not include, the said switching charge.

"7.   That the service afforded by the said public team or delivery tracks is entirely adequate for the requirements of all customers, and that the services above men-

tioned to private customers are rendered only for the convenience of and the saving of expense to the private customer requiring and receiving same; that the ordinary public team track delivery is made without any charge in addition to the charge for the line haul, and that the complainant has exacted this $2.00 charge under like circumstances and conditions from all customers, without discrimination.

"8. That in the year 1915, and prior thereto, the defendants made and promulgated a rule, which was in part as follows:

" 'No charge whatever shall be made by Railroads having the line haul for placing or loading an empty car at any warehouse or other point on its own line, or side track, or for switching the loaded car to or from the same, either for delivery or for transportation.'

"That the complainant believing, as it still believes, that it has the right to make the charge for the additional service aforesaid, continued to make it and exact the payment thereof, as it had been doing theretofore for years, as aforesaid.

"9. That thereupon the defendants instituted in the Supreme Court of the State of Florida a mandamus proceeding, to compel the complainant to desist from charging and exacting the said $2.00 for the additional service aforesaid, and to require it to perform the said service without compensation; that in the said suit, evidence was taken, and substantially proved the facts as hereinbefore alleged, and the said Supreme Court, on April 20th, 1917, decided that the said service for which the said charge was made was a service additional to the line haul, for which complainant was entitled to the said $2.00 for compensation, and denied a peremptory writ

of mandamus. The said decision is reported in 69 Fla. 491, and in 68 So. Rep. 761, and following, and it and the record of said case are made a part hereof, and leave is prayed to refer to the same as often as may be necessary or desirable.

"10. That thereupon the defendants instituted before the Interstate Commerce Commission a proceeding seeking to procure that the said Commission should prohibit the complainant from charging said $2.00 as a switching or spotting charge in its interstate business. Issues were made in the said proceeding and evidence taken, which substantially proved the facts heretofore alleged, and thereupon the said Interstate Commerce Commission decided, on January 1st, 1917, that the said service for which the said charge was made was a service additional to the line haul, for which the complainant was entitled to the said $2.00 as compensation. The said decision is reported in 42 I. C. C. Rep., p. 616, and following, and it and the record of said case are made a part hereof, and leave is prayed to refer to the same as often as may be necessary or desirable.

"11. And thereafter the respondents, by their active exertions caused the legislature of Florida at its session held in the year 1917, to pass, and the Governor to approve, an Act, a copy of which is hereto attached and prayed to be made a part hereof, as Exhibit 'A'. That in and by said Act the said legislature attempted to enact into law the provisions of the rule aforesaid substantially and to provide the imposition of penalties through the agency of the defendants for each and every failure and refusal of the complainant to perform the service aforesaid without the compensation therefor.

"12.   That the said defendants procured the said Act
to be passed for the purpose of compelling the complain-
ant to perform the said service without compensation,
and caused to be inserted in said Act the penal features
thereof for the purpose of enabling them to effect such
compulsion, and that if the complainant does not desist
and refrain from making said charge and does persist in
making the same, and in exacting the payment thereof,
the said defendants will institute against the complain-
ant a penal proceeding provided for in said act and will,
upon the complainant's continued refusal to recognize
the validity of the said act, and to refrain from exact-
ing the said charge aforesaid, from time to time, upon
the occurrence of each of said refusals, resort to the said
penal provisions, and will not only endeavor to enforce
the said illigal act, but will, before the determination of
the question as to whether or not the said act is enforci-
ble, involve the complainant in a multiplicity of penal
suits, and if the act should be declared to be valid, will
subject the complainant to large fines and penalties
under said act.

"13.   That the complainant is advised and believes
that the said act is invalid and unenforcible, as to the
complainant, because it would, if enforced, require the
complainant to use its time and money and property
without compensation, and thus take the property of the
complainant without due process of law, and deny to the
complainant the equal protection of the laws, in viola-
tion of the Fourteenth Amendment to the Constitution
of the United States, and because the said law is unrea-
sonable as applied to the complainant, and is, therefore,
in violation of the said amendment; and because it re-
quires complainant to discriminate in favor of intrastate
business over complainant's line of road, and against

interstate business on said line, the rights of said inter-
state business, as to said switching charge being fixed
by the Interstate Commerce Commission, as aforesaid,
and because it requires the complainant to discriminate
between intratsate shippers, in that complainant is re-
quired to perform for the same compensation a larger
service for the customers enjoying the privileges herein-
before set forth than it performs, or is required to per-
form, for the customers who only enjoy the privileges of
the public team or delivery tracks, such discrimination
being in violation of the Constitution of the State of
Florida.

"For as much, therefore, as the complainant is remedi-
less, save in a court of equity, and to the end that the
defendants may, to the best and utmost of their knowl-
edge, information and belief, full, true and perfect an-
swer make, but not under oath, their oaths being hereby
specially waived, and that pending a final decree in this
suit, the defendants may be enjoined and restrained by
this Honorable Court from instituting any proceeding
against the complainant under or in accordance with the
provisions of the said act of the legislature, and from
otherwise endeavoring to cause the complainant to recog-
nize the said act as effective and valid, and to perform
the services aforesaid without compensation, and that
upon final decree the said injunction shall be made per-
petual, and that the complainant may have such other
and further relief in the premises as may seem meet and
just to this Honorable Court.

"Complainant prays process of subpoena to the defend-
ants, R. Hudson Burr, Newton A. Blitch and Royal C.
Dunn, as Railroad Commissioners of the State of Florida,

returnable according to law and · the practice of this Honorable Court.

"And the complainant will ever pray.

"W. A. Blount,

"Solicitor for Complainant.

"EXHIBIT 'A'.

"CHAPTER 7320—(No. 62).

"AN ACT to Make Illegal Any Charge for Placing or Switching a Car by the Carrier Having the Line Haul and Receiving the Compensation Therefor.

"Be it. enacted by the Legislature of the State of Florida:

"Section 1.  That no charge whatever shall be made by a railroad having the line haul for placing for loading, an empty car at any warehouse or other point on its line or any side track or spur connected therewith or for switching the loaded car to or from the same either for delivery or for transportation for intrastate shipment; it being the purpose of this act to require one placement of a car for loading or unloading upon a side track and its removal in the opposite direction without any charge in addition to the charge for transportation or line haul.

"Section 2.  Any railroad, railroad company, or common carrier violating the provisions of section 1 of this act shall thereby incur a penalty for each such offense of not more than Five Thousand Dollars ($5,000.00), to be fixed and imposed by the Railroad Commissioners in accordance with the provisions of section 2908 of the General Statutes. of the State of Florida, as amended in 1913, and each charge made in violation hereof shall constitute a separate offense.

Section 3. This act shall take effect immediately upon its passage and approval by the Governor.

"Approved June 7, 1917."

A demurrer to the bill of complaint was interposed on the following grounds:

"1. Because there is no equity in the said bill.

"2. Because the statute sought to be annulled and attached to the bill of complaint as Exhibit A, is constitutional and valid.

"3. Because complainant has a plain, adequate and complete remedy at law."

On this demurrer the following order was made:

"This cause having heretofore been submitted on the demurrer to the bill of complaint, and the same having been argued by counsel for the respective parties, and having been duly considered, and it appearing that the demurrer admits as true the allegations of the bill to the following effect, to-wit:

"That the rate for the line haul charged by complainant is reasonable, and therefore fairly compensates complainant for such line haul, only; that the placing of cars on the industrial sidings alleged is an extra service to patrons so served, in addition to the line haul, and solely for their convenience and the saving of expense to them; that such service is of special benefit to such patrons and is a substantial additional expense to complainant over that of delivery at team or free delivery tracks, not included in the line haul rate and forming no part of it; and, further, that such team or free delivery tracks are entirely adequate for serving all patrons of said railway. Therefore, the court holds that com-

plainant is entitled to a reasonable compensation for such additional or accessorial service, and can not be compelled to perform it free of charge.  Therefore, it is

"Considered and ordered by the court that the said demurrer be and the same is hereby overruled, and that said defendant answer said bill of complaint on or before the rule day in April, A. D. 1918.

"Done and ordered at Chambers, at Quincy, Florida, this 2nd day of March, A. D. 1918.

                                        "E. C. Love, Judge."

The defendants appealed and assign as error the overruling of the demurrer; the holding that there is equity in the bill of complaint, and the holding that Chapter 7320, Acts of 1917, is unconstitutional.

In State ex rel. Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 491, 68 South. Rep. 761, it was held:

"1.   A railroad company has a right to load or unload its cars where its facilities or appliances for such work are, and may not be required to establish other facilities for such purpose to accommodate each patron."

"2.   A carrier which renders an additional service to shippers or consignees in carrying freight from or to warehouses or points on private or industrial side-tracks for shipment or delivery is entitled for such service to reasonable compensation."

"4.   The service of delivering freight to consignees in carloads on private or industrial sidings is a service which may not in the present state of the law be required of railroads, nor is it a service which is forbidden.  If the service is of benefit to the patron of the road and involves some service and expense to the railroad, and forms no part of the transportation or haul, but is in

addition thereto, the railroad is entitled to charge for the service, and such charge may not be confined to the actual cost of it."

It was further held that "if these spurs, switching tracks or industrial sidings, as they are called, do not in fact constitute and form part of the repondent's terminal facilities at such stations or points where loaded; and the reception of freight at, or the delivery of freight to, the warehouses or points located on such sidings and the haul to and from such warehouses or points on such sidings or spurs to the regular terminals of the respondent at such stations, established and maintained for the reception and delivery of freight, form no part of the haul or transportation of freight for which the respondent is compensated by its freight rates, then such service is an extra or additional, and not a substituted service. 'But whether or not there is at any point on the respondent's line of road, an additional or extra service in connection with industrial sidings or spur tracks upon which to base an extra charge, or whether there is at all its stations merely a substituted service which is substantially a like service to that included in the line haul rate and not received is a question of fact to be determined according to the actual conditions of operation.' Los Angeles Switching Case, 234 U. S. 294, text 311, 34 Sup. Ct. Rep. 814."

In determining the legality and effect of a statutory regulation, the court should ascertain the legislative intent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to rather than violate applicable provisions and principles of the State and Federal Constitutions, since it must be assumed that the legislature intended

18—Vol. 77.

the enactment to comport with the fundamental law. Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759.

"It is elementary when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity. Knights Templars Indemnity Co. v. Jarman, 187 U. S. 197, 205. And unless this rule be considered as meaning that our duty· is to first decide that a statute is unconstitutional and then proceed to hold that such ruling was unnecessary because the statute is susceptible of a meaning, which causes it not to be repugnant to the constitution, the rule plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter. Harriman v. Interstate Com. Comm., 211 U. S. 407." United States v. Delaware & Hudson Co., 213 U. S. 366, 29 Sup. Ct. Rep. 527.

"A statute must be so construed, if fairly possible, as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. Rep. 658.

The allegations of fact contained in the bill of complaint and admitted by the demurrer are in effect that the service in controversy performed by complainant is not the service rendered to its patrons generally or a substituted service in lieu of that otherwise rendered to the public generally the charge for which is included in

the charge for the line haul; but that the service in controversy is an extra or additional service rendered under special contract in exceptional and particular circumstances, the cost of which is in excess of the cost of the oridnary or substituted service rendered to the public generally, and the charge therefor is not included in the charge for the line haul, the charge for such extra or additional and special service being a reasonable one agreed upon by the interested parties and made in all cases under like circumstances without discrimination.

The State Constitution by Section 30, Article XVI, expressly affirms that "the legislature is invested with full power to pass laws * * * to prevent unjust discriminations and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other service of a public nature."

Under this section, if not also under other organic provisions, the legislature is without power to pass laws requiring or permitting *unjust* discriminations by common carriers. In order "to prevent unjust discriminations," as required by the State Constitution, the statute above quoted and here sought to be enforced, providing that a railroad company in switching or placing empty cars for loading or loaded cars for intrastate transportation at or from "any warehouse or other point on its line, or any side track or spur connected therewith," shall not make a charge therefor if it has the line haul, the purpose being "to require one placement of a car for loading or unloading upon a side track and its removal in the opposite direction without any charge in addition to the charge for transportation or line haul," must be construed to apply to a "switching or placing" and "one

placement" of cars upon the line or any side track or spur connected therewith that constitutes a part of the ordinary or substituted service rendered to the public generally, and not to "switching or placing" of cars rendered as an extra or additional service under special contract in particular circumstances the cost of which is in excess of the ordinary delivery and is not included in the charge for the line haul and delivery at destination. Otherwise the statute by forbidding an extra charge for special service would discriminate against the general public in favor of those to whom special extra and additional service is rendered, the public paying the same for the line haul and usual delivery service as those specially and additionally served would pay for the line haul and the extra service in an exceptional delivery; even if it would not also be an unlawful attempt to require the carrier to render an additional service without compensation. In specially contracting for an extra and additional service in making delivery, the shipper may and presumably does, duly waive his right to the usual delivery made to the public generally.

In Atchison, T. & S. F. R. Co. v. United States, 232 U. S. 199, text 221, 34 Sup. Ct. Rep. 291, it is said that provision may be made for "tariffs stating that the single rate includes both the line haul and accessorial services absorbed in the rate." The statute here considered does not provide for the making of such inclusive tariffs. If the statute should be construed to make a line haul rate which covers only an ordinary delivery at destination, include also an extra and added service in making a delivery different from that to others of the public, which special service costs materially more than the ordinary delivery and such cost is not included in the line haul

rate and the line haul rate is inadequate to cover the special service, such construction would give rise to "grave and doubtful constitutional questions," of unjust discriminations and violative of property right, and should be avoided. United States v. Delaware & Hudson Co., *supra;* United States v. Jin Fuey Moy, *supra;* Knights Templars' and Masons' Life Indemnity Co. v. Jarman, 187 U. S. 197, 23 Sup. Ct. Rep. 108.

Construing the statute with reference to controlling provisions of the State Consitution, it is not applicable to the allegations of fact admitted by the demurrer in this case; therefore the order overruling the demurrer to the bill of complaint is affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.