P. A. HENDERSON, *Plaintiff in Error,* v. WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS, *Defendant in Error.*

Opinion Filed November 28, 1923.

Where a spur track is erected by a railroad company under a contract with a shipper and such spur track is not a part of the carrier's railroad track that is used for the ordinary or a substituted delivery service rendered to the public generally; but delivery by freight on such spur track is an additional service of special advantage to the particular shipper that is rendered under special contract, and the agreed compensation for such special service has been paid as the service is rendered, the amounts so paid cannot be recovered from the carrier upon the ground that the charges were unlawful.

This case was decided by Division B.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Affirmed.

*Atkinson, Evans & Mershon,* for Plaintiff in Error;

*Armstead Brown* and *Robert H. Anderson,* for Defendant in Error.

WHITFIELD, J.—The amended declaration herein is as follows:

"The plaintiff, P. A. Henderson, by his attorneys, Evans & Mershon, sues the defendant, Walker D. Hines, Director General of Railroads, for that WHEREAS

"*First Count:* Heretofore, to-wit: on or about the 28th day of November, 1919, the defendant was, and yet is, and since the 26th day of December, 1917, the defendant and

his predecessor in office, hath been Director General of Railroads, under an Act of Congress of the United States, approved August 29, 1916, and the Proclamation of the President of the United States, in pursuance thereof, of date the twenty-sixth day of December, A. D. 1917, and as such Director General of Railroads, the said defendant, and his predecessor in office, has been in possession and control of the Florida East Coast Railway, and that the said defendant, and his said predecessor in office, since the 28th day of December, 1917, has maintained and operated the said Florida East Coast Railway, being a line of railroad entirely within the State of Florida, extending from Jacksonville in said State, into and through the City of Miami, Florida, to Key West, Florida; that on, to-wit: the 3rd day of January, 1918, the said defendant transported a certain carload shipment of lumber from a point within the State of Florida, consigned to the plaintiff, at Miami, Florida, over the said Florida East Coast Railway, and delivered the same to the plaintiff upon a spur track, at Miami, Florida, connected with the said defendant's line of railroad; that the said defendant, by and through his agents and employees, then and there, in transporting the said carload shipment consigned to the plaintiff as aforesaid, from a point in the State of Florida, to the City of Miami aforesaid, had the line haul of said carload shipment and was paid the full rate charges or toll for transporting the said carload shipment from the said point in the State of Florida, to the City of Miami aforesaid, yet plaintiff says that notwithstanding the premises, the defendant by and through his agents aforesaid, did, on the 3rd day of January, 1918, wrongfully demand of and receive from the plaintiff, the sum of two dollars ($2.00) as a purported charge for the delivery and placement for unloading, of the said C. B. & Q. Car No. 102237, loaded with lumber con-

signed to plaintiff, upon the spur track aforesaid. And plaintiff avers that at divers other times since the said 3rd day of January, 1918, the said defendant has transported over the said railway from points within the State of Florida, car-load shipments of lumber consigned to the plaintiff at Miami, Florida, and has delivered the same to the plaintiff upon the said spur track connected with defendant's said line of railroad, upon which said carload shipments the defendant had the line haul and did receive the full rate transportation charges and toll, and that notwithstanding the premises, the said defendant did wrongfully demand of and receive from the plaintiff, the sum of Two Dollars ($2.00) upon each and every one of said car-load shipmnets as a purported charge for delivering and placing for unloading the said car-load shipments, upon said spur track, in addition to the regular full rate charges and toll paid to the defendant for transporting and delivering to the plaintiff, the said car-load shipments, as aforesaid. And plaintiff further alleges that the said Florida East Coast Railway then and there was and still is the only line of railway entering into the City of Miami, Florida, and that the plaintiff, in order to receive the said shipment of freight, and in order to have the same transported and delivered to the plaintiff, in the City of Miami, Florida, upon the said spur track, was compelled to and did pay to the defendant, the said sum of two dollars ($2.00) for delivering the said C. B. & Q. Car. No. 102237, and each of the other divers carload shipments, which said payments made by the plaintiff to the defendant, as aforesaid, aggregate the sum of, to-wit: One Thousand, Thirtyeight and 42/100 Dollars ($1,038.42), and plaintiff says that the said sum, and each item thereof, was wrongfully and unlawfully demanded and collected from the plaintiff by the defendant.

"WHEREFORE, plaintiff brings this his suit and claims damages in the sum of Three Thousand ($3000.00) Dollars.

"And the said plaintiff further sues the said defendant for that, to-wit: on or about the twenty-eighth day of November, 1919, the said defendant became indebted to the plaintiff in the sum of Three Thousand ($3000.00) Dollars for money had and received by the defendant for the use of the plaintiff.

"Wherefore plaintiff sues and claims damages in the sum of One Thousand Dollars."

Trial was had by the court without a jury upon the following pleas: "Never was indebted as alleged," and "For a further and seventh plea to plaintiff's said declaration, and each count thereof, defendant says that, on January 1st, 1913, the Florida East Coast Railway Company and the McCrimmon Lumber Company entered into an agreement, which is recorded in Deed Book 103, at page 115, *et seq.* of the public records of Dade County, Florida, a copy of which said agreement is hereto attached and marked Exhibit 'A,' and made a part hereof, by the terms whereof the former leased to the latter the right and privilege to use a certain spur track, which had been constructed at the instance and request of the lessee, extending from the lessor's branch line in Miami, Florida, known as the 'Royal Palm Spur,' to and upon the property of the lessee described as Lots 1, 2, 3, 4 and 5, of Block 134, North, of the City of Miami, Florida, which is the identical spur track (save in unimportant details) upon which the declaration alleges the delivery of certain cars by the defendant, for the agreed rental of ONE HUNDRED TWENTY-NINE & 23/100 DOLLARS ($129.23) per annum, and TWO DOLLARS ($2.00) for each car loaded there in or thereout; that on January 2nd, 1914, the McCrimmon Lumber Company

assigned said lease to plaintiff, who affirmatively accepted it subject to all its terms and conditions, including the agreement to pay TWO DOLLARS ($2.00) for each car loaded in or out, said assignment being recorded in Miscellaneous Book No. 1, at page 109, of the public records of said county, and a copy of which is hereto attached designated as Exhibit 'B' and made a part hereof; that defendant, in the operation of its system of transportation, pursuant to the Acts of Congress, proclamations of the President of the United States, and his own general orders, succeeded to all the rights of the Florida East Coast Railway Company under said contract, and assessed and charged the charges herein sought to be recovered, under and in accordance with the provisions thereof;" and upon an "agreed statement of facts and stipulations," the pertinent portions of which are as follows:

"4. That on or about the 3d day of January, 1918, the Director General of Railroads transported a certain carload shipment of lumber from a point within the State of Florida, consigned to the plaintiff, at Miami, Florida, over the said Florida East Coast Railway, and delivered the same to the plaintiff upon a spur track at Miami, Florida, which is connected with the line of railroad of the said Florida East Coast Railway.

"5. That at various and divers other times since January 3, 1918, and prior to the institution of this suit, the Director General of Railroads, transported over the said Florida East Coast Railway, from points within the State of Florida, consigned to the plaintiff, at Miami, Florida, divers and sundry carload shipments of lumber, and delivered the same to the plaintiff at Miami, Florida, upon the said spur track connected with the said line of railroad.

"6. That upon each of said car load shipments, the defendant had the line haul, and was paid and received the full rate charges, or toll, for transporting each of the said car load shipments from the said respective points in the State of Florida, to the said City of Miami, Florida.

"7. That Florida East Coast Railway was, upon January 3, 1918, and now is, and ever since said date, has been, the only line of railroad entering the City of Miami, Florida.

"8. That the defendant, as to each of the carload shipments of lumber above mentioned, required the plaintiff to pay for the delivery of the same to the plaintiff upon the spur track, aforesaid, and the plaintiff did pay to the defendant, the sum of Two Dollars ($2.00) per car for each and every car transported and delivered to the plaintiff upon the said spur track, as a charge for switching, for delivering and placing for unloading upon the said spur track, each of said cars, which said sums so paid were in addition to the charge for the line haul.

"9. That the total number of cars transported and delivered upon said spur track, as aforesaid, between the 3d day of January, 1918, and the date of the institution of this suit, was—397—cars; and the total sum of money paid by the plaintiff to the defendant for placing and delivering said cars upon said spur track, as aforesaid, was $794.00."

"10. That on January 1, 1913, Florida East Coast Railway Company, a corporation as aforesaid, and McCrimmon Lumber Company, a corporation, entered into an agreement in writing, which is recorded in Deed Book 103, at page 115, of the Public Records of Dade County, Florida, providing for the use of a certain spur track which had theretofore been constructed by the defendant, at the instance and request of the said McCrimmon Lumber Company, upon the property of the said McCrimmon Lumber Com-

pany, which said spur track is the identical spur track upon which the defendant delivered the carload shipments to the plaintiff, as above stated. A true copy of said agreement and its accompanying certificates of acknowledgement and of record is hereunto attached, marked Exhibit 'A,' and made a part of this statement of facts; that the said agreement was in existence between the 3d day of January, 1918, and the date of the institution of this suit.

"11.    That on January 2, 1914, McCrimmon Lumber Company assigned the said contract to the plaintiff, who endorsed thereon his acceptance thereof.

"12.    That the Director General of Railroads, under the Act of Congress, aforesaid, succeeded to all of the rights and liabilities of Florida East Coast Railway Company, a corporation, as aforesaid."

The lease referred to in the plea and stipulations contains the following:

"THIS LEASE, Made in duplicate this 1st day of January, A. D. 1913, by and between FLORIDA EAST COAST RAILWAY COMPANY, a corporation organized and existing under the laws of the State of Florida, lessor, and the McCrimmon Lumber Company, a corporation of the State of Florida, lessee, witnesseth:

"That in consideration of the covenants here in contained, on the part of said lessee to be kept and performed, said lessor does hereby lease to said lessee the following described property at Miami, Florida, to-wit: The right and privilege to use that certain spur track at Miami designated on Lessor's plan of Miami Yard as 'Track No. 49;' said track starting from Track No. 15, also known as 'Hotel Spur Track, near its intersection with the west line of Block 134 North of the Town of Miami produced North; thence southeasterly upon lessor's right of way to its southerly limit fifteen (15) feet at rightangle from center line

of said Track No. 15; thence two hundred and twenty-five (225) feet more or less upon the property of the Model Land Company to the North line of Lot No. 3 of said Block No. 134 North; thence continuing across lots numbered three (3), two (2) and one (1) of said Block No. 134 North to the west line of Avenue 'D' of said Town of Miami, a distance of four hundred and twelve (412) feet more or less from point of frog of said Track No. 49.

"In addition to the rental hereinafter provided, the said lessee shall pay the cost to lessor of changing the tracks from the position described in lease dated May 14, 1912, which lease is hereby cancelled, to the position herein described.

"TO HAVE AND TO HOLD the hereby leased property;

"For the term of one year from the date hereof, except as hereinafter provided, the SAID LESSEE PAYING THEREFOR the yearly rental of One Hundred Twenty-Nine and 23/100 Dollars.

"And the said lessee covenants with said lessor as follows:

"(1) To pay said yearly rental of $129.23, in advance,

"And a further rental of Two Dollars for each loaded car in or out for said lessee or others at said location, and if renewed, under the terms hereof, $129.23 for each and every year thereafter in advance during the continuance of this lease.

"15. It is further mutually agreed by and between the parties hereto that if said lessee holds over and remains in possession of the hereby leased property after the expiration of the said term hereinbefore specified or of any renewals thereof, this lease shall be considered as renewed, unless thirty days' written notice of the termination of the same has been given by said lessor, and shall continue in

effect from year to year, subject to the same terms and conditions as herein contained, or until terminated by said lessor by giving thirty days' written notice to the lessee of its intention to terminate the same as herein provided.

"The said lessee in consideration for this lease hereby agrees to provide the necessary right of way for the spur track heretofore described where the same may be located on the property of lessee and upon the expiration or earlier termination of this lease, the lessor is hereby given the right to enter and remove its spur track without interference from said lessee."

The following judgment was rendered:

. "This cause coming on this day for trial before the court without a jury in pursuance of the stipulation of counsel filed herein of date the 27th day of January, 1922, and the said cause having been submitted to the court upon the pleadings herein and the agreed statement of facts made a part of the stipulation aforesaid of date the 27th day of January, 1922, and filed in this cause, and the plaintiff being present by his counsel, and the court having read the agreed statement of facts and being advised in the premises, the court does find upon the isues of law and fact presented to the court by the pleadings and the said agreed statement of facts in favor of the defendant and against the plaintiff.

"It is therefore ordered and adjudged that the defendant go hence without day, and that he do have and recover of and from the plaintiff his costs in his behalf expended here taxed at no dollars, and no cents, for which execution may issue.

"It is further ordered and adjudged that the stipulation of counsel and agreed statement of facts filed in this cause

dated the 27th day of January, 1922, shall be a part of the record herein.''

Writ of error was taken by the plaintiff.

Sections 1 and 2 of Chapter 7320, Acts of 1917, provide:

"Section 1. That no charge whatever shall be made by a railroad having the line haul for placing for loading, an empty car at any warehouse or other point on its line or any side track or spur connected therewith or for switching the loaded car to or from the same either for delivery or for transportation for intrastate shipment; it being the purpose of this Act to require one placement of a car for loading or unloading upon a side track and its removal in the opposite direction without any charge in addition to the charge for transportation or line haul.

''Sec. 2. Any railroad, railroad company, or common carrier violating the provisions of Section 1 of this Act, shall thereby incur a penalty for each such offense of not more than five thousand dollars ($5,000.00), to be fixed and imposed by the Railroad Commissioners in accordance with the provisions of Section 2908 of the General Statutes of the State of Florida, as amended in 1913, and each charge made in violation hereof shall constitute a separate offense.''

The contention of plaintiff in error is that the amended seventh plea is bad and that the judgment rendered is erroneous because the above stautory provisions made unlawful the collection of $2.00 for each and every car transported and delivered to the plaintiff upon its spur track, as a charge for switching, for delivering and placing for unloading upon said spur track, each of said cars, which said sums so paid were in addition to the charge for the line haul;'' and that the plaintiff should recover such charges in this action.

In Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464, it was held that ''the legislature is without

power to pass laws requiring or permitting *unjust* discriminations by common carriers. In order 'to .prevent unjust discriminations,' as required by the State Constitution, the statute above quoted and here sought to be enforced, providing that a railroad company in switching or placing empty cars for loading or loaded cars for intrastate transportation at or from 'any warehouse or other point on its line, or any side track or spur connected therewith,' shall not make a charge therefor if it has the line haul, the purpose· being 'to require one placement of a car for loading or unloading upon a side track and its removal in the opposite direction without any charge in addition to the charge for transportation or line haul,' must be construed to apply to a 'switching or placing' and 'one placement' of cars upon the line or any side track or spur connected therewith, that constitutes a part of the ordinary or substituted service rendered to the public generally, and not to 'switching or placing' of cars rendered as an extra or additional service under special contract in particular circumstances the cost of which is in excess of the ordinary delivery and is not included in the charge for the line haul and delivery at destination. Otherwise, the statute by forbidding an extra charge for special service would discriminate against the general public in favor of those to whom special, extra and additional service is rendered, the public paying the same for the line haul and usual delivery service as those specially and additionally served would pay for the line haul and the extra service in an exceptional delivery; even if it would not also be an unlawful attempt to require the carrier to render an additional service without compensation. In specially contracting for an extra and additional service in making delivery, the shipper may and presumably does, duly waive his right to the usual delivery made to the public generally.''

The declaration alleges that the defendant "had the line haul of said carload shipment and was paid the full rate charges or toll for transporting the said carload shipment from the said point in the State of Florida to the city of Miami, aforesaid."

The amended seventh plea of the defendant avers that the spur track was constructed by the railroad company as lessor at the instance and request of the lessee upon the property of the lessee to whose rights the plaintiff succeeded.

The stipulation is that the Director General transported the loaded cars from points in Florida to Miami in Florida, and delivered them to the plaintiff upon a spur track at Miami, Florida, which is conected with the line of defendant's railroad; that defendant had the line haul and received the full rate charges for carload shipments from points in Florida to the City of Miami, Florida.

The lease contract provides for building the spur tracks on the lessee's land and shows an agreement of the lessee to pay the lessor, to whose rights the defendant succeeded, a "yearly rental of $129.23; * and a further rental of two dollars for each loaded car in or out for said lessee," with a provision that the lease "shall continue in effect from year to year, subject to the same terms and conditions as herein contained."

Thus from the record of the trial it clearly appears that delivery on the particular spur track, which though connected with defendant's line of railroad, was not "a part of the ordinary or substituted service rendered to the public generally," but was "an extra or additional service rendered under special contract."

It must be assumed from the conceded facts that the deliveries made *on the particular spur track* were as a special advantage to the plaintiff; and as such they could not have

been considered in making the rate for the line haul. For the special service thus rendered to the plaintiff a reasonable charge could be made; and the contract rate continuously paid apparently without protest must be assumed to be reasonable on this record. See State *ex rel.* Railroad Commissioners v. F. E. C. Ry. Co., 65 Fla. 420, 62 South. Rep. 593; State *ex rel.* Railroad Commissioners v. Florida East Coast R. Co., 69 Fla. 491, 68 South. Rep. 761; Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464; Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 234 U. S. 294, 34 Sup. Ct. Rep. 814; Atchison, T. & S. F. R. Co. v. United States, 232 U. S. 199, 34 Sup. Ct. Rep. 291.

Affirmed.

WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.