**Mary Edith CARTER, Appellant,**

v.

**George CARTER, Appellee.**

**No. 4021.**

Court of Civil Appeals of Texas.

Waco.

June 14, 1962.

Rehearing Denied July 19, 1962.

R. A. Kilpatrick, John A. James, Jr., Cleburne, for appellant.

Gean B. Turner, James E. Ferguson, Cleburne, for appellee.

TIREY, Justice.

This action is for divorce and for the custody of a 20 months old son. The jury, in its verdict, found that George Carter had been guilty of such cruel treatment and excesses toward his wife as to render their further living together as husband and wife insupportable to her; it also found that Mrs. Carter had been guilty of such cruel treatment and excesses toward her husband

as to render their further living together as husband and wife insupportable to him; it further found that it would be to the best interest of the child for its custody to be awarded to George Carter, the father, subject to such visitation rights as the Court may order. The Court overruled Mrs. Carter's motion for judgment non obstante veredicto and granted the husband's motion for judgment, and decreed that the husband have judgment on his cross action for divorce from the plaintiff. It further awarded the care and custody of the child to its father with the rights of visitation to the mother, which are specifically set out in the decree. The Court further decreed that the mother, Mary Edith Carter, take nothing by reason of her suit against George Carter. Motion for new trial was seasonably filed, and it being overruled, plaintiff perfected her appeal to this Court.

The Court permitted the mother to supersede the judgment awarding custody to the father, by the execution of a bond in the sum of $500.00.

Appellant's 6th Point is to the effect that the Court erred in accepting the verdict of the jury as to the custody of the child as final and controlling under Art. 4639a, Sec. 1 as amended by House Bill 436, 1961, because such Article as amended by such House Bill is unconstitutional because same is in violation of Art. 5, Sec. 8 of the Constitution of the State of Texas, Vernon's Ann.St. Art. 5, Section 1 of our Constitution provides in part:

"Section 1. The judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in a Court of Criminal Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law."

Section 8, pertinent to this discussion, provides in part:

"The District Court shall have appellate jurisdiction and general control in probate matters, over the County Court established in each county, for appointing guardians, granting letters testamentary and of administration, probating wills, for settling the accounts of executors, administrators and guardians, and for the transaction of all business appertaining to estates; *and original jurisdiction and general control over executors, administrators, guardians and minors under such regulations as may be prescribed by law.*" (Emphasis ours.)

Article 4639 of our Revised Statutes of 1911, Vernon's Ann.Civ.St. art. 4639, provides:

"A divorce shall not in anywise affect the legitimacy of the children of the parents so divorced. The court shall have power, in all divorce suits, to give the custody and education of the children to either father or mother, as the court shall deem right and proper, having regard to the prudence and ability of the parents, and the age and sex of the children, to be determined and decided on the petition of either party; and in the meantime to issue any injunction or make any order that the safety and well-being of any such children may require."

Under the foregoing provisions of our Constitution and Art. 4639, our courts have held in effect that the District Court had exclusive jurisdiction and control to award the care, custody and control to such parent as the custody found to be to the best interest of the child. In so doing the court could, in the exercise of its discretion, award the care, custody and control to a third party if it was of the view that the best interest of the child so required. The decisions of our appellate courts in the interpretation given to this provision of our Constitution and the foregoing statute, have been uniformly construed as aforesaid.

The 57th Legislature, as shown by its amended Acts, Chapter 305, Sec. 1, page

663, which became effective June 14, 1961, provides in part as follows:

" * * * Upon the trial of any such cause, and in the event a divorce is granted by the court, if there are such minor children, it shall be the duty of such trial court to inquire into the surroundings and circumstances of each such child or children, and such court shall have full power and authority to inquire into and ascertain the financial circumstances of the parents of such child or children, and of their ability to contribute to the support of same, and such court shall make such orders regarding the custody and support of each such child or children, as is for the best interest of same; *provided, however, that the judgment of the court in a jury trial of a divorce cause may not contravene the jury's determination of child custody. In any hearing held in this State concerning the custody of a child, whether pursuant to a divorce cause or not, any party to the hearing may, upon assumption of jury costs, demand a jury to determine custody of the child, and the judgment of the court must conform to that determination.*"

It is obvious that this provision of the statute makes it mandatory upon the court to abide by the verdict of the jury as to the award of custody. In the event the court was of the view that the jury's verdict was against the best interest of the child, its only remedy would be to enter the judgment and then grant a motion for new trial and set the judgment aside. It is obvious that the granting of a new trial would be of no avail to the Court, because the Court would not have the authority to exercise its equitable and broad discretionary powers with reference to the custody of the child. This is true because the cause has been placed on the jury docket, and it would be the duty of the Court under the amendment to impanel another jury and to submit again the evidence to this jury to determine the proper custody and control of the child. "Frequent custody hearings are discouraged

and not encouraged." See Short v. Short, 354 S.W.2d 933, Sup.Ct. During this period of time the custody of the child must remain under the temporary orders of the Court, and the Court is powerless to do for the child what the Court believes to be for its best welfare. The effect of the amendment is to exhaust the Constitutional jurisdiction of the Court to award the custody of the child.

Going back to the consideration of Art. 5 and Section 8, we think the opinion of the Commission of Appeals in Thomason v. McGeorge, Tex.Com.App., 285 S.W. 285, sheds some light on the question here before us. In that case the Court had before it the provisions of Sec. 8, Art. 5 of the Constitution of our State and also Sec. 16 of the same article. The Court in discussing Sections 8 and 16 aforesaid, said:

"In these provisions there is no conflict. Their effect, in so far as the same is material to this case, is to clothe the district court with the old common-law chancery jurisdiction of general control over guardians and minors, and to vest in the county court jurisdiction to appoint guardians of minors and transact all business appertaining to such minors. *The jurisdiction in each instance is of course exclusive.* In the very nature of such jurisdictions the control thus given to the district court is superior in a sense to that given to the county court. It is superior in the sense that, where the equities and necessities of the case require it, the district court may interfere, if it be an interference, by wresting the custody of a minor from the guardian, and awarding it elsewhere. Indeed, the rights of the parent as natural guardian as well are subordinate to the powers of the district court in this respect. The rights of the state—society—are paramount, and, where the public welfare demands it, the lesser rights of parent, guardian, or whomsoever, must yield. Indeed, what is essentially the same thing, the

rights of the minor are themselves superior to the rights of parent, guardian, or other custodian, and will in any case prevail upon considerations of highest public policy." (Emphasis ours.)

It is true that the Constitution does not say that the power granted to the District Court in Section 8 is exclusive in the District Court, but that is the holding of the foregoing case, and that construction and interpretation has been uniformly given to the foregoing provisions of our Constitution until the Legislature passed the amendment aforesaid. That leads us to say that the clause in Sec. 8 which says: "under such regulations as may be prescribed by law" does not authorize the Legislature to take away the general control of minors from the district court. We think the only construction that could be given to the clause is to give the Legislature power to enact such laws relating to procedural matters so that the court would have all necessary process, as will enable the court to effectively exercise its general control and jurisdiction. Any other construction of this clause would be too broad, and would authorize the Legislature to enact the amendment under consideration, the effect of which is to be in open and irreconcilable conflict with the general control of minors provided for by the section under consideration.

In Webster's Unabridged Dictionary we find the following definition of the word "general": "1. The whole; the total; that which comprehends all of the chief parts; opposed to particular." The word "control" is defined: "1. The act of controlling; the power to control, regulate, or guide." In this connection we think the statement of Chief Justice Gaines in Ex parte Reeves, 100 Tex. 617, 103 S.W. 478, p. 480, is pertinent here. There we find this statement: "It would seem that in framing the provisions of sections 8 and 16 of article 5 of the Constitution the able lawyers who drew it had in view the jurisdiction exercised by courts of equity over

minors, and intended to confer so much as relates to guardianship to the county courts and that which was exercised over their custody merely to the district courts." See also Ex parte Willig, Tex.Civ.App., 314 S.W.2d 395, n. r. e.; Whittenberg v. Craven, 258 S.W. 152 (Comm.App.). (As to definition of a court, see Ruling Case Law, Vol. 7 "Courts" paragraph 2, page 973. See also Vol. 15 "Judges," paragraph 2, page 512.)

Our Supreme Court in Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, had occasion to consider Art. 5 and Sec. 8 of our Texas Constitution, and in that opinion we find this statement:

"The powers of the district courts to award custody have been held to be independent of and superior to the powers of county courts, under Article 5, Section 16 of the Constitution, and the guardianship statutes (Articles 4102, 4118 and related articles in Title 69, Vernon's Tex.Civ.St.) to appoint and supervise guardians of the persons of minors." Citing Thomason v. McGeorge aforesaid and many other cases.

In Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79, the Supreme Court, in dealing with a child custody case, made the following statement:

"One cannot invoke the jurisdiction of the court to deal with the personal status or the person of a child and at the same time deny the power of the court, in that proceeding, to do with the child's person or his status whatever appears to the court to be for the best interest of the child. The petitioner having brought the child before the court could not by the nature of his pleading limit the constitutional jurisdiction of the court to deal in fullest measure with the child's person or status."

Yet the Legislature by the amendment, places the well-being and future status of the child solely in the hands of the jury,

and makes the district court impotent to do what it believes to be for the best welfare of the child. We think the effect of the Supreme Court's decisions we have cited is to hold that the district court has the right and the duty to take into consideration all the facts and surrounding circumstances and the general situation relating to the child in order to form an intelligent judgment on what will be best for the child's welfare. Needless to say that the amendment strikes down the judicial interpretation heretofore given to Sections 8 and 16 as found in Art. 5 of our State Constitution. It follows that we are of the view that the amendment here under consideration is contrary to and violates the provisions of the Texas Constitution heretofore pointed out, giving general control of minors to the district court and interferes and prevents the district court from the exercise of its equity jurisdiction provided for it by our Constitution in the custody of children. We think this view is in keeping with the recent pronouncement of our Supreme Court in Lord v. Clayton, 352 S.W.2d 718, point page 721, where the Court said that

"* * * while the Legislature could create special courts under authority of an 1891 amendment to Section 1, Article 5 of the Constitution, * * * and could confer on such courts concurrent jurisdiction over subjects mentioned in section 8 of Article 5 of the Constitution, it could not deprive regular district courts of the jurisdiction conferred on them by the Constitution."

Needless to say that the award of the care and custody of a child places upon the district court the greatest burden and greatest responsibility that it has to bear in the discharge of its duties. This is so because it involves the well being, the future life, and the destiny of a human being, God's greatest creation. In the trial of civil cases, there is no other situation comparable to the restriction placed upon the powers and equities of a district court.

It is true in civil cases that under Art. 2211, V.A.T.S. of 1911, Vernon's Ann.Civ. St. art. 2211, where a jury made a finding on special issues that the findings of the jury upon the issues made by the pleadings in the case although against the undisputed evidence or without evidence to support them, could not be disregarded, but the answers of the jury had to constitute the necessary basis upon which any proper judgment could be rendered. Art. 2211 aforesaid was amended by our Legislature on August 22, 1931. The purpose of the 1931 amendment was intended to and did obviate the apparent harshness of the foregoing rule and permitted the court to disregard a special issue finding which had no support in the evidence. The amendment gave the court the right, on proper motion, to disregard the findings of the jury where it was of the view that there was no evidence to support it, or thought the answer to such issue was against the great weight and preponderance of the evidence. See Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970, opinion adopted by the Supreme Court.

The foregoing change in our procedure enabled the district court to exercise its judicial and equity powers, and the foregoing provision has been carried forward into the new rules as provided for in Rule 301, Texas Rules of Civil Procedure. Needless to say, what is for the best interest of a minor child is subject to change almost overnight, or certainly in the course of a few months, and we think the responsibility and duty to minors placed upon the district court by our Constitution should not be limited or restricted by the Legislature, because the district court must be free to take into consideration all the surrounding facts and circumstances and equities that pertain to the best interest of a child, including not only his present but his future existence, and surely the district court is in a better position than the jury to arrive at a legal consideration of what is best for the child.

This court, in Oldfield v. Campbell, 191 S.W.2d 897, speaking through the late Justice Hale, said:

"It is also well established that when a suit involving the custody of a minor is tried with the aid of a jury the findings of the jury with respect to the child's welfare and interest are advisory only and are not binding on the courts. In a case of such magnitude and possible consequences, the law places the solemn responsibility upon a trained judiciary not only to exercise general control over the minor but to weigh the evidence and ultimately to determine under all the facts and circumstances what is best for the child." Citing Constitution of Texas, Art. 5, Sec. 8; Wright v. Wright, 50 Tex.Civ. App. 459, 110 S.W. 158; Northcutt v. Northcutt, Tex.Civ.App., 287 S.W. 515, Er. dis.; Lawler v. Lawler, Tex. Civ.App., 15 S.W.2d 684; Bateman v. Bateman, Tex.Civ.App., 188 S.W.2d 866, er. dis.

The writer is of the view that the framers of our Constitution did not intend that our Legislature would have the power to take the care, custody and control of children away from a trained judiciary. Chief Justice McDonald and Associate Justice Wilson are of the view that the amendment is Constitutional.

Point 2 is to the effect that the court committed reversible error in permitting appellee, over appellant's objection, to introduce a letter of Douglas Hughes because it was hearsay, and because it was highly prejudicial to appellant. The transcript shows that appellant filed her petition for divorce on September 19, 1960. There is evidence to the effect that in October after the divorce was filed, appellant and her husband had been conferring with each other with reference to an agreement between them as to the custody of their son; that while these negotiations were going on, the husband took his wife by the county jail to see a man there confined by the name of Douglas Hughes; that the husband waited in the car outside of the jail while Mrs. Carter went inside the jail, and in a short time she came out of the jail and walked to the car. She had what purported to be a letter in her hand. Appellee testified she handed the letter to him. She testified he jerked the letter out of her hand. There was no evidence in the record as to who had written the letter, no evidence of handwriting; but the court, over the objection of appellant, permitted the appellee to put the letter in evidence on the theory that her husband said his wife told him that the letter was from Douglas Hughes. The letter tendered in evidence was dated October 22, 1960, and contains many statements which are very prejudicial to the appellant. The letter, by implication, shows that appellant and Douglas Hughes had been keeping company with each other for some time, and that according to their plans, Mrs. Carter would get a divorce and after that they would be married and that they had been discussing the question of giving up the baby. One paragraph in the letter said: "Baby you will have to make up your own mind about the child, but you know that I would rather you gave him up. For like I was telling you when I come out I want you and I to be able to start out all over and you know with you having the baby it will be awfully hard to forget for you and worse for me. But you see I know children are the dearest to anyone. You see I want a family of my own more than anything else in the world. So you can see why you must be the one to decide what you must do. * * * You know you told me something the other day that I don't want to hear about you doing again ever. That is when you went to the 'beer joint.' Mary, I mean this very much, because you are too innocent to be going to any of those places. If you ever want to go I will take you myself. * * * If I didn't love you very much I would not be telling you all this. Mary, like you were saying, none of your people like me. If it were

not for you I wouldn't care. But since I love you I will try to make them love me; believe they will in time  *  *  *."

 Evidence was tendered to the effect that after appellee took his wife by the jail, he then took her to a filling station operated by Jack Sanders, who was a Notary Public, and there he got his wife to execute and acknowledge an instrument, previously prepared by appellee's attorney, and without knowledge of appellant's attorney, the effect of which was to give her husband the custody of the child, and evidence was tendered to the effect that he paid his wife some $150.00 for executing this instrument. We are of the view that the letter being hearsay and inadmissible for any purpose, and the contents and the implications were so far-reaching and so prejudicial to the rights of the appellant that the jury could not with the letter before it, award custody of the child on the basis of what it deemed right and proper, having regard to the prudence and ability of the parents and the age and sex of the child. Moreover, the evidence is without dispute that the mother has had the custody of the child since filing the divorce suit. The testimony is overwhelming to the effect that the child is well and strong; that he is well clothed, well fed and well provided for, and that considering his tender age and surrounding circumstances, the mother, who is some 20 years old, is discharging her full duty to the care, support and control of this child. (All members of the court are of the view that the cause must be reversed and remanded on account of the error in admitting the letter. Two members of the court are of the further view that the award of custody of this 20 months old child to the father is against the great weight and preponderance of the evidence, and is manifestly wrong and unjust. See In re King's Estate, 150 Tex. 662, 244 S. W.2d 660.)

Our Supreme Court in State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, made this statement of the rule for our guide:

"God, in *his* wisdom, has placed upon the father and mother the obligation to nurture, educate, protect, and guide their offspring, and has qualified them to discharge those important duties by writing in their hearts sentiments of affection, and establishing between them and their children ties which cannot exist between the children and any other persons. Especially is this the case with the mother."

We think the cause should be reversed and remanded for the reasons above stated. All other points are overruled. The judgment awarding the divorce of the parties is affirmed and the costs of this appeal, including all costs in the court below, are taxed against the appellee. Reversed and remanded in part; and in part affirmed.