CROSS, Judge.
The appellants-plaintiffs, Ross Virgil Lanier et ux., et al., in 52 cases consolidated on appeal, appeal from final judgments in favor of the appellees-defendants, Murray A. Bronson, as Tax Collector of Osceola County, Florida, and Fred O. Dickinson, Jr., as Comptroller of the State of Florida, in actions seeking injunctions to prevent the collection of taxes.
In the year 1959 a program of general reassessment of property was initiated by action of the Board of County Commissioners and the Tax Assessor of Osceola County by hiring a firm of professional appraisers to revalue all classes of taxable property. This general revaluation program resulted in an increase in the general level of assessed value of all classes of taxable property from $15,531,878.00 in the year 1959 to $103,628,654.00 in the year 1960. This produced an increase in tax dollars from $580,892.24 to $948,202.18, or a net increase of $367,309.94. The total non-exempt assessed values continued to rise. In the year 1963 Osceola County tax rolls reflected a total assessment of $123,-526,923.00. The millage rate at that time was 10.9.
In the year 1964 the county tax assessor reappraised all agricultural lands in Osceola County. The reappraisal resulted in a 92% increase of assessed values of agricultural land. The assessor did not reappraise any of the other classes of taxable property. This action on the part of the tax assessor resulted in an increase in property assessment from $123,526,923.00 in the year 1963 to $180,724,804.00 in the year 1964, or a net increase of $57,197,881.-00. This constituted an increase of 46% over the year 1963. After deductions and adjustments the increase was 43%. The millage for the year 1964 was rolled back 28.44%, or from 10.9 mills to 7.8 mills.
Thereafter a multitude of lawsuits was filed by ranchers and farmers attacking the increase in assessment. This litigation resulted in a court holding the agricultural reassessment to be arbitrary, and as a result, the assessment for the year 1964 was reduced to $162,193,988.00, at which time the court also set forth guidelines the tax assessor could follow in future tax assessing.
In preparing the tax roll in the year 1965, the assessor followed the court’s guidelines with the resultant assessed value of $152,-471,331.00. The county commissioners then raised the millage in the year 1965 to 12.6. In the year 1966 the total valuation was $154,065,789.00, and the millage was 12.8.
The basic position taken by the plaintiffs in this cause of action is that F.S. 1963, Section 193.03, F.S.A., and F.S.1965, Section 193.031, F.S.A., required that the millage in the year 1965 be no more than 7.8 mills levied in 1964, absent compliance with the procedural requirements of Section 193.03. Similarly, they maintain that the millage in the year 1966 should have *778 been no more than 8.58, a 10% increase over the 7.8 mills they claim is the lawful maximum for 1965. This contention they base on F.S.1965, Section 193.031, F.S.A., effective January 1, 1966.
The trial court ruled that there had not been an increase in the general level of the assessed value in the year 1964 so as to trigger the rollback provision of said Section 193.03, and there being no increase in the general level in the year 1965, either, said Section 193.031 did not apply to place a ceiling on the increase in millage. Pertinent parts of the ruling incorporated in the final judgment are as follows:
“It is further noted that the Legislature in the same session in 1963 provided by F.S. 193.021 [F.S.A.] new standards by which tax assessors were mandatorily charged to follow in assessing all classes of property beginning January 1, 1964. It was clearly the Legislative intent that the provisions of F.S. 193.03 [F.S.A.] would become applicable and controlling in the year of revaluation of all real and personal property in the county. It is generally known that many counties in the state have had revaluations so as to comply with the law so as to effect mandatory millage control for the years to come.” (Emphasis added.)
“Unfortunately, in the instant case, the Osceola County taxing officials have not seen fit to provide for a general revaluation of all real and personal property in the county, although it appears there is a clear legal duty to so do. The Osceola County Tax Assessor attempted to revalue one class of real estate in 1964, but his actions were legally declared invalid. Until such time as there is a revaluation of all classes of real and personal property at its fair market price in Osceola County, in accordance with the standards set forth in 193.021, the millage control law does not become effective. The millage control law is prospective in affect [sic] because it became effective January 1, 1964. The revaluation of 1960 has no bearing on the matter because there were no uniform standards to guide tax assessors as are now provided by F.S. 193.021 [F.S.A.].
“It follows that the millage set by the taxing officials of Osceola County for 1965 is lawful. * * * ”
The myriad rules which have been designed by the courts for the purpose of construing statutes were designed for the purpose of ascertaining in doubtful cases what the legislative intent was in promulgating the statute under consideration. Words are the means of expressing that intention, making a permanent monument of it and are, when clear, the best evidence of what the law is. The search in cases of this kind is to ascertain this intent. Because of the complexities and limitations of language, and the difficulty ofttimes experienced in expressing thoughts by printed words, the problems of statutory construction are fraught with difficulty. In doubtful cases we must among other things turn to the language used, the general policy of the law on the subject, the objects which the legislature had in mind in the enactment of the legislation, the purposes sought to be accomplished by such legislation, and the nature of the subject being legislated upon in order to determine as nearly as we can just what the legislature intended the law to be.
As a historical background to the determination of the cause before us, we note that it has been common knowledge that in the past the county tax assessors of Florida have assessed property at a percentage of the fair market value. Judicial decisions beginning in 1942 with the case of Schleman v. Connecticut General Life Insurance Co., 1942, 151 Fla. 96, 9 So.2d 197, have held that valuations less than one hundred percent of “just value” as required by Section 1, Article IX of the state constitution, F.S.A., would not be tolerated even though uniformly applied. *779 However, it was not until January 1, 1964, that the legislature saw fit to promulgate a method of assessment of property, thereby giving the tax. assessors of this state a guideline in appraising property for tax purposes. F.S. Section 193.021, F.S.A.[1]
The legislature, being cognizant of the above alluded to judicial trend, realized that there was a need for millage control law when the general level of assessment was increased, and enacted F.S.1963, Section 193.03, F.S.A., which requires a rollback in millage after an increase in the general level of assessed value over the preceding year. In F.S.1963, Section 193.-03, F.S.A., there was a proviso applicable only to the 1963-64 and the 1964 — 65 fiscal years, which authorized an additional millage increase upward not more than 10% if the budget-making authority determined additional operating funds were necessary. The legislature of 1965 removed the limitations of F.S.1963, Section 193.03, F.S.A. as to future years, effective as of January 1, 1966.
A reading of the pertinent parts of F.S. 1965, Section 193.03, F.S.A.,[2] both initially when it was promulgated in 1963 and the effective amendment to it, reveals that the rollback of millage is triggered only upon what the legislature termed as “the increase of the general level of assessed value over the preceding year.” Since this court must he guided by the polar star of legislative intent, we must of necessity determine whether a major increase in the assessment of one class of property, i. e., in the instant case agricultural property, would be considered a “general” level increase, thus triggering the rollback provision of F.S. 1963, Section 193.03, F.S.A.
We find in Webster’s New Twentieth Century Dictionary, second edition, that the word “general” means the whole, the total, that which comprehends all of the chief parts. See also Carter v. Carter, Tex.Civ.App.1962, 359 S.W.2d 184. Thus, the plain meaning of the word “general” affords the appellants no solace.
*780 Statutes that relate to the same person or thing or to the same class of persons or things or to the same or closely-allied subject or object are regarded as in pari materia. 30 Fla.Jur., Statutes, § 108. We are of the conviction that F.S. Section 193.03, F.S.A., must be read in pari ma-teria with F.S. Section 193.021, F.S.A. This is exemplified by reading the first line of F.S. Section 193.03, F.S.A., “(1) After the assessment rolls have been prepared on the basis required by law * * The basis required by law, effective January 1, 1964, was the basis delineated by the legislature in F.S. Section 193.021, F.S.A. “The county assessor of taxes of the several counties shall assess all the real and personal property in said counties * (Emphasis added.)
The plaintiffs emphasize that to allow a major increase in assessment in one class of property, i. e., in this particular instance, agricultural, one year and then to allow a similar increase in the remaining property values the next and hold that neither was a general increase would permit circumvention of the purposes of F.S. Section 193.03, F.S.A. We agree. However, the prevention of such circumvention is best left within the realm of the Legislature and not the Judiciary. Courts are law-interpreting and not lawmaking bodies, Ervin v. Collins, Fla. 1956, 85 So.2d 852, 59 A.L.R.2d 706.
We have concluded that the able trial judge was eminently correct in determining that the millage control law does not become effective until there is a revaluation of all classes of real and personal property at their just valuation according to the standards set forth in Section 193.021, Florida Statutes, F.S.A. Any other construction of the word “general” as used in the phrase “increase of the general level of assessed value” would be a strained construction.
The judgments are severally affirmed.
OWEN, J., and HENSLEY, ROBERT E., Associate Judge, concur.

. “F.S. 193.021 F.S.A. Method of assessment of property. The county assessor of taxes of tlie several counties shall assess all the real and personal property in said counties in such a manner as to secure a just valuation as required by § 1, Art. IX of the state constitution. In arriving at a just valuation, the county assessor of taxes of the several counties shall take into consideration the following factors:
“(1) The present cash value of the property;
“ (2) The highest and best use to which the property can be expected to be put in the immediate future; and the present use of the property;
“(3) The location of said property;
“(4) The quantity or size of said property;
“(5) The cost of said property and the present replacement value of any improvements thereon;
“(6) The condition of said property;
“(7) The income from said property; and
“(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, in-eluding the costs and expenses of financing.”

. F.S. Section 193.03, F.S.A. Method of fixing millage in year of revaluation.
“(1) After the assessment rolls have been prepared on the basis required by law, the board of county commissioners and the board of public instruction and all other governing boards or governing authorities of all other taxing districts, within the counties including municipalities, whose taxes are assessed on the tax roll prepared by the county assessor, shall reduce the millage to be levied by each such governing authority from what it was in the preceding year proportionate to the increase of the general level of assessed value over the preceding year. Provided, however, if in preparing its proposed budget for the year in which the reduction of millage is required such budget making authority determines that the millage required for operating funds should be increased no more than ten per cent more than the millage determined in subsection (6) of this section it shall proceed as follows: