Mr. Gail Shannon President West Texas State University Canyon, Texas 79016
Re: Whether officers of West Texas State University may make arrests outside of university or county
Dear Mr. Shannon:
West Texas State University [hereinafter WTSU] is located in Randall County. WTSU conducts its intercollegiate basketball games in the Amarillo Civic Center, which is located in Potter County. You advise that officers of the WTSU Police Department, who are commissioned Texas peace officers, see Education Code section 51.203; Code Criminal Procedure article 2.12(9), are assigned to work at these games. You are concerned about the implications of arrests made by these officers during disturbances at these games. You ask:
 1. Would an arrest made by the WTSU police officer at a WTSU basketball game conducted in the Amarillo Civic Center be valid?
 2. Would the university be liable if an individual being arrested is injured by a WTSU police officer?
Various statutes authorize `peace officers' and, in some instances, other individuals to make arrests. For example, article 14.01 of the Code of Criminal Procedure provides as follows:
 (a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.
 (b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.
See also, e.g., Code Crim. Proc. arts. 14.02 et seq.; 15.01 et seq. (arrests under warrant); V.T.C.S. art. 6701d, § 153 (warrantless arrests for traffic offenses).
For purposes of paragraph (a) of article 14.01, it makes no difference whether WTSU police officers are `peace officers' while on duty at the Amarillo Civic Center. Any individual may make a `citizen's arrest' under that provision, provided that all applicable legal requirements are met. See, e.g., Code Crim. Proc. art.14.06; Alexander v. United States, 390 F.2d 101 (5th Cir. 1968); Romo v. State, 577 S.W.2d 251
(Tex.Crim.App. 1979); Woods v. State, 213 S.W.2d 685
(Tex.Crim.App. 1948). For purposes of paragraph (b) of article 14.01 and other statutes which only authorize `peace officers' to make arrests, however, it does matter whether WTSU police officers are `peace officers' while at the Civic Center. If they cannot be so characterized, they may not legally make arrests under these statutes.
Section 51.203 of the Education Code reads in part as follows:
 The governing boards of each state institution of higher education may employ campus security personnel for the purpose of carrying out the provisions of this subchapter and may commission them as peace officers. Any officer commissioned under this section is vested with all the powers, privileges, and immunities of peace officers while on the property under the control and jurisdiction of the institution of higher education or otherwise in the performance of his duties. . . . (Emphasis added).
The underscored portions of section 51.203 establish that: (1) institutions of higher education may only employ campus security personnel to carry out the provisions of chapter 51, subchapter E of the Education Code, and (2) said personnel only possess the powers of `peace officers' while `on the property under the control and jurisdiction of the institution of higher education or otherwise in the performance of [their] duties.' We conclude that WTSU police officers are, while on duty at the Amarillo Civic Center, `on . . . property under the control and jurisdiction' of WTSU within the meaning of section 51.203. They are therefore `peace officers' within the meaning of that section.
The words `control' and `jurisdiction' are not defined in section 51.203. Words in a statute which are not defined therein are given their ordinary meaning. Satterfield v. Satterfield, 448 S.W.2d 456 (Tex. 1969). The Texas Supreme Court has stated that `control' means `[p]ower or authority to manage, direct, govern, administer, or oversee.' American Fidelity and Casualty Company v. Traders and General Insurance Company,334 S.W.2d 772, 775 (Tex. 1959). `Control' has also been defined as `the power to control, regulate, or guide.' Carter v. Carter, 359 S.W.2d 184, 187
(Tex.Civ.App.-Waco), writ dism'd w.o.j., 362 S.W.2d 646
(Tex. 1962). `Jurisdiction' is generally regarded as synonymous with `authority' and `control.' Webster's New Collegiate Dictionary 628 (5th ed. 1977).
WTSU entered into a rental agreement with the city of Amarillo to lease the Amarillo Civic Center to conduct its basketball games. This agreement provides that WTSU has `the right to use and occupy' the Civic Center from 6 a.m. until midnight on 16 specified dates. It obligates WTSU to, among other things, (1) pay for damage to the Center resulting from such occupancy or use; (2) prevent anyone from bringing into the Center `anything that will increase the fire hazard or the rate of insurance on the building or any property therein'; (3) prevent anyone from making or permitting changes, alterations, etc., in any part of the building; (4) `furnish or pay for such police protection as may be required by the Public Buildings Manager during the occupancy of such Lessee'; and (5) `abide by and conform with all of the provisions of the City of Amarillo and all Federal, State or local laws, statutes, ordinances, resolutions or regulations.'
In our opinion, property need not be owned by an institution of higher education in order to be under the institution's `control and jurisdiction' within the meaning of section 51.203. Compare Educ. Code § 51.202
(university governing board may promulgate rules applicable to `institutional property under its control'). (Emphasis added). Property which is leased by an institution may, we believe, also be deemed to be under its `control and jurisdiction,' at least where, as here, the lease agreement obligates the institution to `manage, direct, govern, administer, or oversee' the property during the times specified in the agreement. By virtue of the rental agreement, therefore, the Civic Center is property `under the control and jurisdiction' of WTSU during the times specified therein.
As noted, section 51.203 specifies that governing boards may only employ campus security personnel `for the purpose of carrying out the provisions of this subchapter.' Section 51.210 of the Education Code provides that:
 Notwithstanding any of the provisions of this subchapter, all officers commissioned by the governing board of a state institution of higher education may be empowered by the board to enforce rules and regulations promulgated by the board. Nothing in this subchapter is intended to limit or restrict the authority of each institution to promulgate and enforce appropriate rules and regulations for the orderly conduct of the institution in carrying out its purposes and objectives or the right of separate jurisdiction relating to the conduct of its students and personnel.
See also Educ. Code § 51.201 (state's general and criminal laws in effect in areas under institution's control and jurisdiction).
WTSU certainly has the right to promulgate rules applicable to students and personnel in attendance at WTSU basketball games being played at the Amarillo Civic Center. In our opinion, it clearly has a concomitant right to assign its police officers to enforce institutional rules at these games. While on duty at these games, therefore, WTSU police officers are being employed `for the purpose of carrying out the provisions of this subchapter.'
Since we conclude that WTSU police officers are `peace officers' within the meaning of section 51.203 while on duty at the Civic Center, we need not decide what their status would be in other circumstances and at other times. Compare United States v. Garcia, No. 81-2115 (5th Cir. May 28, 1982) with Christopher v. State, No. 61,679 (Tex.Crim.App. June 23, 1982).
We now turn to your second question. Article 6252-19, V.T.C.S., the Texas Tort Claims Act, provides in relevant part as follows:
Sec. 14. The provisions of this Act shall not apply to:
. . . .
 (9) Any claim based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion or arising out of the failure to provide, or the method of providing, police or fire protection.
In Lloyd v. University of Texas, 524 S.W.2d 958
(Tex.Civ.App.-Beaumont 1975, writ ref'd n.r.e.), the University of Texas police arrested an individual for driving while intoxicated. While being taken to the Austin police station, he fell out of the police car, and he later sued the university under the Tort Claims Act. The district court granted summary judgment in favor of the university, and the court of civil appeals affirmed.
The appellate court focused its attention on section 14(9), quoted above. It noted that the plaintiff asserted that a fact question existed as to whether the university police were actually `providing police protection' at the time of his injury. The court held, however, that `appellant's arrest for the offense of driving while intoxicated on the campus of the University of Texas was a method of providing police protection.' 524 S.W.2d at 959. See also Little v. Schafer, 319 F. Supp. 190 (S.D.Tex. 1970); Davis v. County of Lubbock, 486 S.W.2d 109 (Tex.Civ.App.-Amarillo 1972, no writ).
In answer to your question, we cannot conclude that every situation involving a university police officer who arrests someone at the Amarillo Civic Center will automatically invoke section 14(9). In light of the Lloyd case, however, we can reasonably conclude that most situations will do so. If an arrest made by a WTSU police officer constitutes a `method of providing police protection,' which is a fact question, the university will not be liable for an injury suffered by the party being arrested during the course of that arrest.
 SUMMARY
West Texas State University police officers are `peace officers' within the meaning of section 51.203 of the Texas Education Code while on duty at the Amarillo Civic Center during WTSU basketball games being played there. Accordingly, they may make valid arrests under statutes authorizing `peace officers' to arrest. Under the Texas Tort Claims Act, article 6252-19, V.T.C.S., WTSU is not liable for claims based on injuries connected with acts or omissions arising out of methods of providing police protection.
Very truly yours,
 Mark White Attorney General of Texas
 John W. Fainter, Jr. First Assistant Attorney General
 Richard E. Gray III Executive Assistant Attorney General
 Prepared by Jon Bible Assistant Attorney General