PER CURIAM.
This is a direct appeal from final decrees entered in two cases which have been consolidated. The material facts and governing principles of law applicable to both cases are quite similar and will be treated together herein.
We take jurisdiction of these causes under Article V, Section 4(2) of the Florida Constitution F.S.A. since the trial court construed a controlling constitutional provision in arriving at its decision as will hereinafter appear, and declared invalid Chapter 61-502, Laws of Florida, as it is applied in this case.
The basic issue in this cause is the present validity of certain “grants” of exclusive rights to plant and harvest oysters, upon a designated area in the bottom of Apalachicola Bay, St. George Sound and St. Vincent Sound.
The grants in question were made by the Board of County Commissioners of Franklin County, Florida, pursuant to Chapter 3293, Laws of Florida, Acts of 1881, entitled
“An Act to Encourage the Planting of Oysters in the Waters of this State, and to Protect the Rights of Owners thereof.”
Sections 1 and 2 of this Act are as follows :—
“Section 1. Any person desiring to plant oysters in the public waters of this State shall apply to the County Commissioners of the county in which the water is situated, setting forth his determination to plant oysters in a certain locality, describing the same as near as may be possible; and the said Commissioners may grant exclusive rights to such person for such locality or any portion thereof, with such boundaries as they may deem proper.
“Section 2. Any person obtaining from the County Commissioners such grant or exclusive right, and shall fail to utilize the same by planting oysters therein within one year thereafter, shall forfeit such grant.”
It also provides:
“Section 7. That all the existing natural or maternal oyster beds in the waters of this State are exempt from the provisions of this Act, and that they remain for the free use of the citizens of this State.”
Pursuant to Chapter 3293, Laws of Florida 1881, portions of which are above set out, the Franklin County Commissioners in or about 1902-1905 made a number of grants to the predecessors in title of the appellees.
In 1961 the Florida Legislature enacted Chapter 61-502 by the terms of which, inter alia, all persons asserting any interest in any oyster leases or grants were required to register same with the State Department of Conservation, abide by certain minimal requirements for marking the boundaries thereof and the payment of a rental fee thereon in the amount of fifty cents an acre as prescribed by Section 370.16 F.S. Additionally, the 1961 Act required such persons to abide by the provisions of F.S. Section 370.16 F.S.A. relating to the cultivation of such oyster beds and the forfeiture provisions therein contained. By its terms said Act provided that any grantee failing to comply with its provisions shall suffer his grant to become null and void.
Upon the enactment of the 1961 law, the appellees filed separate suits against the appropriate state agencies, appellants herein, to enjoin the enforcement of the latter Act on the grounds to require them to submit to the requirements, including rental payments imposed by the 1961 Act, would subject them to deprivation of property without just compensation and due process.
*723 By their pleadings, the plaintiffs alleged the doing of all things necessary to the perfection of their rights. Moreover, alleged the plaintiffs, by operation of the provisions of Chapter 6532, Laws of Florida, Acts of 1913, their grants had been confirmed. Section 2 of said Act provides as follows:—
“That all grants prior to June 1, 1913, made in pursuance of heretofore existing laws, where the person, firm or corporation receiving such grant, his heirs or assigns, have bona fide complied with the requirements of said law, be and the same are hereby confirmed as under said law provided for; Provided, * * * the said Shell Fish Commissioner shall investigate all grants heretofore made, and where, in his opinion, the lessee or grantee has not bona fide complied with the law under which he received his grant or lease, he shall report the same to the Commissioner of Agriculture, who is hereby authorized and required to institute legal proceedings to vacate the same, in order to use such lands for the benefit of the public, subject to the same dispositions as other bottoms.”
By its pleadings, the state contended that the grants at issue were presently invalid for the following reasons:—
1. The grants were not executed in the manner required by Section 14, Article IV of the Florida Constitution.
2. The- grants are invalid because by the enactment under which they were made, Chapter 3293, Acts of 1881, the Legislature exceeded its power to dispose of sovereign property.
3. The conditions of the grants were violated so as to cause a reverter of the rights granted.
4. The rights acquired by the grantees were extinguished by non-use or abandonment.
5.Much of the area within the boundaries of the several grants consisted of natural or maternal oyster beds which by the express provisions of the “grant law” were beyond the Board of County Commissioners’ power of disposition.
Upon the issues thusly framed, the chancellor, after receiving evidence, both documentary and oral, and hearing arguments thereon, entered his order upon which final decrees were entered in each of the cases holding that Chapter 61-502, Laws of Florida 1961, was invalid insofar as it seeks to divest the plaintiffs of rights which the court held had vested in them without due process and just compensation.
The state’s defenses as above set forth were decided against it by the court below except the last one numbered 5 above. As to this last contention by the state the chancellor held that certain portions of the several grants were indeed natural oyster beds as shown by a map or chart of Apalachicola Bay and environs made by one Lieut. Franklin Swift, U.S.N., for the Federal Bureau of Fisheries between November, 1895 and March, 1896. The map was introduced in evidence and is part of the record on appeal. No error is assigned by any of the parties to this appeal respecting the chancellor’s ruling on the natural oyster bed issue as resolved below.
We will deal first with the question of whether or not the County Commissioners of Franklin County had the power under the constitution of Florida to make a grant of any part of the sovereignty lands belonging to the state. The people of Florida have always zealously guarded their rights in their sovereignty lands and have made it difficult for their officials to dispose of them without compensation moving to the state. Thus, Section 14 of Article IV, Constitution of Florida, was adopted and provided
“All grants and commissions shall be in the name and under the authority of the State of Florida, sealed with the great *724 seal of the State, signed by the Governor, and countersigned by the Secretary of State.”
The grants here involved were not executed in accordance with the command of this section, and were delivered without compensation to the State, and must therefore be held to be void and ineffectual to convey any interests in the sovereignty lands involved. We do not construe or hold that Section 14 of Article IV, supra, applies to grants, including deeds and leases, by the State, where there is a valuable consideration flowing to the State for same.
In Perky Properties v. Felton, 113 Fla. 432, 151 So. 892, we recognized that the public policy of this state militates against indiscriminate giveaways of the tidal and submerged lands of the state and the uses thereof where there are absent, appropriate reservations, compensation, or consideration. There we said:—
“The tidal and submerged lands of the state and the uses thereof are held in trust for all the people of the state; and, while private rights in the uses of limited portions of such lands may be granted by the Legislature upon proper terms, reservations, and considerations when the public welfare will thereby be promoted, State [ex rel. Ellis] v. Gerbing, 56 Fla. 603, 47 So. 353, 22 L.R.A. (N.S.) 337, yet legislative grants to private ownership of the exclusive rights and privilege to grow and gather sponges upon large areas of tidal submerged lands of the state, with the right to inclose such areas and to close the inlets thereto, without reservation, compensation, or consideration, is not contemplated by the public nature and purposes of the title of the state to such lands which was acquired as a sovereign right upon the admission of Florida in the Union as a sovereign state.” (Italics supplied.)
The views that we expressed in Perky, supra, have not been receded from as indicated by the chancellor below by his reference to Watson v. Holland, 155 Fla. 342, 20 So.2d 388, and like cases. In those cases, unlike the Perky case, as well as the consolidated cases here, the court had under consideration transactions under which lessees or grantees were required to pay substantial sums to the state in exchange for the rights acquired. Such payments variously took the form of lease rental payments or royalties on production as well as the investment of substantial sums and exploration and development purposes.
In the Perky case the court went on to say:
“If the complainant has in good faith planted sponges in the described territory, it may by appropriate procedure protect its corporeal property rights in planted sponges and the material used in sponge propagation, whatever they may be, when the rights of others would not thereby be violated; and this right may exist even though complainant does not have the exclusive rights claimed by it, or the other rights as to inclosing areas and closing inlets to the described premises. The state has proper remedies if the complainant exceeds its rights in the tidal lands or in the waters thereon.” (Italics supplied.)
It is therefore our opinion, and we hold, that the grantees acquired no vested rights under the Act of 1881 nor the so-called curative statute of 1913. If the grantees acquired anything under the Act of 1881 it was a color of authority to enter upon the premises. If the grantees are to be recognized as having any present right at all, it would be that recognized in Perky Properties v. Felton, supra. It would then become a question of fact as to whether or not the grantees or their successors had in good faith planted oysters in the described territory and continued to cultivate them in good faith and to do the other things required of them to be done.
*725 In its consideration of the question of abandonment as interposed by the state, the court below conceded that “The evidence as to the extent of actual planting of oysters on the granted areas is, at best, meager and contradictory.” Thereafter the court stated its opinion that the rights conferred by the grants, if any, and contemplated by the statute to be enjoyed by the recipients of the grants were in the nature of and constitute profits a prendre and therefore not subject to abandonment by non-user no matter how long such non-use may continue.
We have examined the cases cited in support of this rule of law in 25 A.L.R.2d 1275, and note the cases relate to easements arising by grant or deed between private parties and for consideration. We certainly agree that the rule cited by the chancellor is controlling in such private transactions. However, the rights involved in the instant cases, though they be in the nature of profits a prendre and though they have many of the attributes of private easements, are nonetheless distinguishable from those involved in the cases cited by the court below.
We have also examined the cases cited by the court below from 49 A.L.R.2d 1396, in its discussion of the nature of the rights here under consideration. That the cases found in that annotation are not exclusively determinative of the nature of the rights inuring to the recipients of these public grants becomes apparent from the note stating the scope of this annotation at p. 1396:—
“As indicated by the title, the annotation is restricted to a consideration of grants and reservations by private individuals or companies, thereby excluding grants and reservations by the crown, the state, or other governmental body, as well as privileges gained by prescription.” (Italics supplied.)
Assuming, arguendo that the grantees did acquire something under the grants, it is clear from reading the provisions of the statute that a grantee thereunder had obligations correlative ■ to the rights to be gained by grant of exclusive rights to cultivate and harvest oysters on designated oyster bottoms situated in sovereign waters extending over thousands of acres.
It is our view that the obligations of a grantee of rights here under consideration are best described in the following language taken from 36A C.J.S. Fish § 12c.:—
“The requirements and conditions imposed on a grantee of the right of planting or taking oysters, etc., are not conditions subsequent, but are continuous, and on his failure to perform them the franchise or privilege reverts to the state without any affirmative action on its part to enforce a forfeiture * * *. Where the grantee of such franchise or privilege fails for a number of years to perform the requirements of the statute, and does not in good faith locate on the territory, plant a bed of oysters thereon, or continue to protect them by the marks recognized by law, a person (who does so) * * * has the right to take them from him.”
The above quotation thus sets forth matters the noncompliance with which would justify a factual finding that any oyster rights under the Perky decision had been abandoned by non-user, failure to assert continuing dominion, and so on.
In ruling upon the defendants’ contention that the grants in question had reverted to the state for failure to plant the respective grants within one year, the court below relied heavily upon an inference that the grants had been planted. The inference, held the chancellor, arose from a presumption that public officers will do their duty. The Legislature by Chapter 6532, Laws of Florida, Acts of 1913, had required the Shellfish Commissioner to inspect the site of all outstanding grants to determine whether they were being utilized and, where the contrary appeared, to bring actions to declare such *726 grants vacated. Inasmuch as the record before the court below failed to reveal the filing of any suit to vacate the grants, the chancellor reasoned that they were all being utilized and maintained for oyster cultivation purposes. Many thousands of acres of cultivated oyster beds under private dominion and control would be deemed to exist in the Apalachicola Bay area in the period shortly following 1913 by operation of the presumption relied upon below.
It is our view that in a proper setting, the presumption that an officer has performed the duties required by law may well have its place, yet where such presumption is to be relied upon, it can hardly be held to be a conclusive or irrebuttable presumption. Examination of the record on appeal in this cause reveals that there was received in evidence a map or chart of the water bottoms here involved which was formulated from an extensive physical survey of these waters by the United States Fisheries Bureau beginning in January, 1915. The title of this survey report is “Condition and Extent of the' Natural Beds and Barren Bottoms in the Vicinity of Apalachicola, Florida.” Neither the written report by Danglade nor the map reveals the existence of the thousands of acres of privately cultivated oyster beds by operation of the presumption relied upon below. Sound logic and reasoning lead us to the conclusion that whatever probative weight might attach to the presumption aforementioned, has been effectively rebutted by the hard evidence contained in the survey report and map.
For the reasons above stated, we hold that in view of Section 14, Article IV, Constitution of Florida, the grants here under consideration conveyed no vested rights to the grantees and that the only claim, if any, of the grantees and their successors in title is that which may be made for oysters planted, cultivated and developed in good faith under the rule announced in the Perky case, supra, and in order to establish such right it is necessary for the claimants to carry the burden and support their claims with evidence.
Accordingly, the order and decrees entered herein by the court below are hereby vacated and the causes remanded to the trial court for a finding of facts as herein-above outlined and for further proceedings not inconsistent with this opinion.
It is so ordered.
THORNAL, C. J., THOMAS, ROBERTS and O’CONNELL, JJ., and MASON, Circuit Judge, concur.