**COASTAL PETROLEUM COMPANY, a Florida corporation, Petitioner,**

v.

**SECRETARY OF the ARMY OF the UNITED STATES of America, et al., Respondent.**

**Nos. 68–951–Civ., 69–699–Civ. (consolidated).**

United States District Court, S. D. Florida, Miami Division.

July 1, 1970.

Frank Bezoni and Charlie Luckie, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., Joseph C. Jacobs, of Ervin, Pennington, Varn & Jacobs, Tallahassee, Fla., C. Dean Reasoner, of Reasoner, Davis & Vinson, and Irving R. M. Panzer, Washington, D. C., for petitioner.

Robert W. Rust, U. S. Atty., and Robert Silverstein, Asst. U. S. Atty., Miami, Fla., Robert H. Long, District Counsel, Corps of Engineers, Dept. of Justice, Washington, D. C., and William E. Welch, Acting District Counsel, Corps of Engineers, Jacksonville, Fla., for respondents Secretary of the Army of the United States and Col. John F. McElhenny.

Thomas J. Schwartz, West Palm Beach, Fla., for respondent Central and Southern Florida Flood Control District.

Earl F. Faircloth, Atty. Gen., Tallahassee, Fla., and T. T. Turnbull, Chief Trial Counsel, Tallahassee, Fla., for Trustees of the Internal Improvement Trust Fund. Neal P. Rutledge, Miami, Fla., Special Counsel for Trustees of the Internal Improvement Trust Fund.

## MEMORANDUM OPINION

ATKINS, District Judge.

A lake is many things to many people. In this lawsuit the lake is Okeechobee, the largest body of water wholly contained within the borders of the continental United States. It serves as a playground, wildlife preserve, a link in navigation between the east and west coasts of Florida, and, most importantly, water source for the people of South Florida and the many visitors to this area.

The plaintiff is Coastal Petroleum Company. While the Company's name is generally descriptive of its function, petroleum is not at stake in this case. Coastal seeks to exercise claimed mineral rights and extricate quantities of limestone from a portion of the bed of Lake Okeechobee. In pursuit of this objective the company sought to obtain a permit from the U. S. Army Corps of Engineers and the Secretary of the Army in accordance with Title 33 U.S.Code § 403 which prohibits the creation of any obstruction of the navigable waters of the United States unless it has been authorized by the Secretary.[1] The Army initially replied that, in accordance with certain regulations,[2] application for a

---

1. Lake Okeechobee is undisputedly a navigable water of the United States.

2. Section IV of the Jacksonville District supplement to an Army booklet entitled "Permits for Work in Navigable Waters" states:
   All applications (Classes A through C) must be accompanied with written approval of the proper authorities of the municipality in which the work is located (if located in a municipality and if that municipality requires prior approval for the type of work under consideration), of the county authority having jurisdiction in the county in which the work is located, and of the Trustees of the Internal Improvement Fund of the State of Florida. The Corps of Engineers will not process the application until satisfactory written evidence of the local and state approval is in hand.

permit would not be processed unless accompanied by approval of appropriate local authorities. Coastal's request for such approval from these authorities was refused. At this point the positions of all parties to this lawsuit became apparent and Coastal initiated the action seeking a declaratory judgment and an injunction.

As the style of this case indicates, the defendants are the Department of the Army, the Central and Southern Florida Flood Control District and the Trustees of the Internal Improvement Fund of the State of Florida, referred to hereafter as the Army, the Flood Control District and the Trustees. As the suit seeks to cause issuance of the aforementioned permit the Army was initially the principal defendant. The latter two defendants are the "appropriate local authorities" whose approval the Army requires.

Subsequent to the filing of the suit and notwithstanding the absence of approval from the Trustees and the Flood Control District the Corps of Engineers conducted hearings and processed plaintiff's application for a permit. The result was negative as set forth in a letter from John F. McElhenny, Colonel, Corps of Engineers, District Engineer to Mr. Benjamin W. Heath, President, Coastal Petroleum Company, Inc., Suite 500, 37 Lewis Street, Hartford, Connecticut 06103, on August 26, 1969.[3] The grounds which are set forth for denial of the permit do not include obstruction of the navigable capacity of Lake Okeechobee.

■ The action of the Army thus comes directly under the purview of Zabel v. Tabb, 296 F.Supp. 764 (Fla.M.D. 1969). I embrace the reasoning of this opinion written by my distinguished brother Judge, Ben Krentzman, and find that the denial of the permit by the Army is invalid as it is not bottomed on the finding that the work which Coastal seeks to perform will obstruct navigation in Lake Okeechobee.[4] Regardless of this conclusion, for reasons set forth below, I decline to order issuance of the permit.

■ The division of this case into Zabel and non-Zabel issues occurred prior to the trial held this past October. The result of the Zabel decision was total polarization between Coastal and the Army. Coastal relied on Judge Krentzman's opinion and the Army on briefs filed before the Fifth Circuit appealing this decision. The effect was the shifting of the focus of the dispute to issues between Coastal and the Trustees as to the basic right of Coastal to mine limestone in the Lake. While these issues

3. "The application of the Coastal Petroleum Company dated 29 August 1968 for a Department of the Army permit to mine limestone from an area of Lake Okeechobee has been given careful consideration at all levels of the Department of the Army.

Confirming advance information furnished your company by telegram on 12 August 1969, I have to inform you that your application must be, and hereby is, denied.

This denial is based on the following considerations:

a. You have been unable to show that you have a legal right to do the work proposed under the permit in view of the action of the Trustees of the Internal Improvement Fund of the State of Florida on 27 May 1969 declaring Drilling Lease No. 248, as modified, to be in default in its entirety and the lease and all the lessee's rights thereunder to be terminated;

b. Issuance of a permit is unanimously and vigorously opposed by all responsible local, State, and Federal agencies, local and State officials and Florida Congressmen, and recognized conservation groups; and

c. Issuance of the permit would result in substantial harmful effect upon fish and wildlife resources, ecology, conservation, and the water quality of Lake Okeechobee.

BY AUTHORITY OF THE SECRETARY OF THE ARMY."

4. As all parties are aware Zabel was appealed to the Fifth Circuit and has been argued. The appellate decision will obviously be of great significance as my holding on this aspect of the case is based on the lower court decision.

could have been litigated in the Courts of Florida I have retained the case to determine the issues under the doctrine of pendent jurisdiction. Much judicial labor was expended on all aspects of the case before the Army's position became clear and it is unquestioned that there would have been much duplication of effort had I declined to consider the "non-federal" questions. These issues along with the clear federal question "derive from a common nucleus of operative fact" United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) and as such are appropriately decided by this Court.

As mentioned, the trial of this cause was held in October, 1969. The decision rendered at this time follows months of extensive briefing by the remaining adversaries—Coastal and the Trustees.[5] Reiterating that issues relating to Coastal's claim of compensation for limestone removed from the Lake have been severed, the questions which remain to be determined concern (1) the validity of leases which Coastal obtained from the Trustees and which allegedly give Coastal the right to mine in the Lake and (2) whether limestone is a substance within the mineral rights Coastal claims by virtue of the leases. The pretrial stipulation drew these two as follows:

a. Whether the decision of the Supreme Court of the State of Florida in Collins v. Coastal Petroleum Company, Fla.App., 118 So.2d 796, or any other decision of the State or Federal Courts has finally determined the validity of Leases Nos. 248, 224A and 224B, so that their validity is no longer an issue which may be determined by this Court.

b. Whether limestone is covered by Lease No. 248.

The latter issue will be dealt with first as it is more readily disposed of. I find that the decree of Judge Hugh Taylor in Coastal Petroleum Company v. Bryant, Chancery No. 18569, Circuit Court of the Second Judicial Circuit, Leon County, Fla. is determinative. Judge Taylor held that calcium carbonate[6] is a mineral within Coastal leases. The form of calcium carbonate at stake in the instant case clearly fits the description of the form of calcium carbonate found covered by the Coastal leases in Bryant, i.e., "deposits which are found substantially beneath the surface of the ground and which are useful only because of their chemical content or, (which) to be used because of physical characteristics, must be broken and crushed as rock." In view of the Bryant decision I do not find any merit in an evaluation of textbook authorities on the question of limestone being a mineral or a long discussion of the intent of the parties to the leases being determinative of this question.

The question of the validity of the leases is the most significant aspect of the lawsuit. Coastal leases numbered 248, 224A and 224B cover large areas of this State and can be the locale for all types of activity by Coastal—activity which may not require government approval or be limited by such things as the definition of a mineral. In light of Collins v. Coastal Petroleum, 118 So.2d 796 (Fla.App.1960), Coastal's Exhibit 48, a letter written by an employee of the Trustees, James T. Williams, and the resolutions of the Trustees in ratifying the footage allocation and in approving an assignment and agreement between Coastal and Mobil Oil Co., I find that the leases between Coastal and the State of Florida as represented by the Trustees are valid.

The history of these leases up until 1960 is set forth in the Collins opinion

---

5. In accordance with the request in Zabel, I asked for a second round of briefs on the relevancy of the recently enacted National Environmental Policy Act. I find it not to be applicable.

6. Calcium carbonate is for all practical purposes, limestone.

and incorporated herein by reference. Originally granted for the purpose of promoting oil and gas exploration, the Trustees and Coastal expanded the scope of the leases to include minerals. It was this expansion which came under attack in *Collins*. The manner in which the leases had been originally entered into and the statutory basis for such leases has been long settled by the case of Watson v. Holland, 155 Fla. 342, 20 So. 2d 388 (1945). That case, incidentally, found the Trustees on the other side as they contended that the leases were valid.

The holding in *Collins* and Judge Taylor's subsequent pronouncements in *Bryant, supra*, stating that the leases are valid remove any doubt as to the continued viability of the leases up until 1964. The leases were renewed at five-year intervals and 1964 was such an interval. At that point there were two occurrences which operated to renew these leases for another five-year period. The first of these was a resolution of the Trustees on February 17, 1965 which approved a contract between Coastal and Mobil Oil Co. concerning the leases. The contract stated that the leases were not encumbered. The second occurrence was a letter written by a State employee, James T. Williams, to Mobil Oil Co. The letter confirmed the action taken by the Trustees as follows:

"* * * the Trustees, at their meeting on February 17, 1965, approved the letter-agreement and joint-operating-agreement, both dated December 16, 1964, between Socony Mobil Oil Company, Inc., and Coastal Petroleum Company * * *"

Inherent in the finding that the leases are valid are the conclusions that the principles of res adjudicata should not be relaxed because of the public's interest in the subject matter of this suit and that the Trustees are estopped from declaring the leases void. The matter of res adjudicata is easily dealt with. The

doctrine has been given its accepted dignity by my reliance on *Bryant* and *Collins*. If it can be said that the doctrine may be weakened in cases of the public's interest, it is nevertheless unnecessary in this case as the final remedy granted will reflect. With regard to the Trustees being estopped, this finding only applies to the period up until the last renewal, December of 1969.[7] Discussion of Coastal's reliance on the existence of the leases and the Trustees' renewals is unnecessary as it is obvious on the face of the record.

Having determined that Coastal has established its legal right to proceed with its mining operations in Lake Okeechobee I herein set forth the reasons why I decline to enforce this right in the manner which Coastal has requested. The following statement from the Trustees' brief describes the importance of Lake Okeechobee to the State of Florida:

"South Florida, with its expanding population already zooming into the millions, in a 'water-short' area; that Lake Okeechobee—a huge but shallow basin with a limestone floor—is the only place in the entire area where fresh water can be stored in sufficient quantities to meet the fluctuating needs of that population, the needs of Florida's unique and priceless Everglades National Park, and the needs of the tremendously valuable central and south Florida agricultural industry; that the fresh water in Lake Okeechobee is presently of high purity and of a quality (if not quantity) to meet the demands made upon it; and finally that the removal of large portions of the limestone floor of the lake will weaken the barrier which separates the pure fresh water in the Lake from impure, saline water lying under pressure beneath the rock, thereby dangerously jeopardizing the fresh water supply of the entire Central and South Florida area."

7. Action on this renewal has been held in abeyance pending resolution of this suit.

Evidence was presented as to the possible effect of Coastal's operations on the quality of the water supply emanating from the Lake and as to the weakening of the barrier which prevents saline intrusion. This evidence was hotly contested by Coastal and countered by the argument that the Army and the Flood Control District have been mining the Lake for limestone for years.[8] I find this evidence as to the possible effects persuasive. It is by no means absolute but the balancing of interests between Coastal, the Trustees, and the people of the State of Florida lends weight to the prevention of such mining operations by a private company.

In answer to Coastal's argument that other groups are mining the Lake I would point out that the Army Corps of Engineers and the Flood Control District are public entities and their operations are in pursuit of the public good. Accepting the indicia of evidence about the possible effects of the mining it can be stated that the public agencies who do such mining are balancing public interests with public interests. Coastal's scale would balance the public interest with profit. In dealing with this Lake I do not find Coastal's balance acceptable.

Equally important in my decision to refuse Coastal the relief which would allow it to mine is the fact that Coastal's legal right to this limestone in Lake Okeechobee can be preserved by an award of money damages for lost profits. Having upheld the right of Coastal to the limestone, and having refused to allow Coastal to mine this limestone, I now hold that Coastal should be compensated for such profit loss as it can show at hearings to be held at a future date.[9] I find the potentially light burden on the taxpayers of this State to be far preferable to the possible damage to Lake Okeechobee and the environment of South Florida. Justice demands that the public's interest be protected and, in this case, justice can provide equal dignity to the valid private right.

In closing I would comment that the efforts by the parties in this case, principally the Trustees and Coastal, have been exhaustive and most helpful to this Court. This Opinion is written after careful examination of these efforts, and while I do not choose to dissect them in print, their contribution to this Opinion is manifest.

---

8. The limestone obtained is used for levee construction along the shore of the Lake.

9. This cause is set for trial on this issue at Fort Pierce, Florida on October 26, 1970 at 10:00 a. m.