485 So.2d 1302 (1986)
DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
AT & T INFORMATION SYSTEMS, a Foreign Corporation, Appellee.
No. 85-216.
District Court of Appeal of Florida, Third District.
March 4, 1986.
Rehearing Denied April 16, 1986.
*1303 Robert A. Ginsburg, Co. Atty., and R.A. Cuevas, Jr. and Craig H. Coller, Asst. Co. Attys., for appellant.
Thomson, Zeder, Bohrer, Werth, Adorno & Razook and Stephen L. Roof and Sanford Bohrer, Miami, for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
BASKIN, Judge.
The reorganization and divestiture of American Telephone and Telegraph Company [AT & T] prompted the litigation sought to be reviewed. In this appeal, Metropolitan Dade County [the County] challenges an Amended Final Judgment in which the trial court ruled that American Telephone and Telegraph Information Systems [Information Systems] is not subject to an excise tax imposed on the sale of certain public services pursuant to section 29-37, Metropolitan Dade County Code. Agreeing with the trial court that Information Systems does not sell or provide "telephone service," we affirm.
In 1945, the Florida legislature promulgated a statute authorizing municipalities to levy a tax on the purchase of certain public services, including telephone service. Ch. 22829, Laws of Fla. (1945) (codified at § 167.431, Fla. Stat. (Supp. 1947)) (as amended at § 166.231, Fla. Stat. (1983)). Pursuant to that statutory authority, the County Commission enacted an ordinance imposing an excise tax on every purchase of public utility services, including telephone service. § 29-37, Metropolitan Dade County Code. From the inception of the tax in 1970, until December 31, 1983, Southern Bell Telephone and Telegraph Company [Southern Bell], the local common carrier provider of telephone service, collected and remitted the tax on all telephone service it provided as part of its basic local exchange service. One element of Southern Bell's service was the provision of "customer premises equipment" [CPE], which includes telephones and other equipment located at customers' homes or businesses.
In 1980, the Federal Communications Commission [FCC] determined that the offering of CPE was no longer a common carrier activity, should not be provided as a part of common carrier transmission service, and was no longer subject to tariff. In the Matter of Amendment of Section 64.702 of the Commissions Rules & Regulations (Second Computer Inquiry) (Final Decision) 77 F.C.C.2d 384, 439, as modified on reconsideration, 84 F.C.C.2d 50 (1980), as modified on further reconsideration, 88 F.C.C.2d 512 (1981), aff'd sub nom. Computer & Communications Industry Association v. Federal Communications Commission, 693 F.2d 198 (D.C. Cir.1982), cert. denied sub nom. National Association of Regulatory Utility Commission v. Federal Communications Commission, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313, cert. denied sub nom. Louisiana Public Service Commission v. Federal Communications Commission, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). The FCC mandated that AT & T establish a separate corporate entity, not connected with its local transmission companies, to provide CPE. Second Computer Inquiry, 77 F.C.C.2d at 389. As a result of this mandate, AT & T formed Information Systems, a wholly owned subsidiary established as a participant in the "interconnect industry." The "interconnect industry" consists of competing firms that supply CPE as well as other communications, data processing, and office equipment, which can be connected to local telephone networks.
In compliance with the orders issued by the FCC in Second Computer Inquiry and the opinions of the United States district court in federal antitrust actions, United States v. American Telephone & Telegraph Co., 552 F. Supp. 131 (D.D.C. 1982), appeal dismissed, 714 F.2d 178 (D.C. Cir.), aff'd sub nom. Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983); United States v. Western Electric Co., 569 F. Supp. 990 (D.D.C.), *1304 appeal dismissed, 714 F.2d 178 (D.C. Cir.), aff'd sub nom. California v. United States, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983); United States v. Western Electric Co., 569 F. Supp. 1057 (D.D.C.), appeal dismissed, 714 F.2d 178 (D.C. Cir.), aff'd sub nom. California v. United States, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983), Southern Bell transferred ownership of its CPE to Information Systems on January 1, 1984. On the same date, pursuant to an agreement entered in settlement of the federal antitrust actions, AT & T divested itself of its local telephone service providers, including Southern Bell. See United States v. American Telephone & Telegraph Co., 552 F. Supp. 131. Southern Bell remained the common carrier provider of transmission service and, as billing agent for Information Systems, continued to bill customers for rental of CPE. At the direction of Information Systems, however, Southern Bell collected no excise tax on the rental charge. As a result, the monthly telephone service tax revenues received by the County dropped from $1,168,232.39 in December, 1983, to $688,474.00 in January, 1984.
The substantial decrease in tax revenues caused the County to institute an action against Southern Bell and Information Systems to require them to collect and remit the excise tax on the rental of the CPE formerly owned by Southern Bell. The County alleged that Information Systems sold "telephone service," as defined by the Metropolitan Dade County Code, without collecting the tax required by the ordinance. Information Systems counterclaimed, seeking a declaratory judgment ruling that the rental of CPE did not constitute a taxable "telephone service." The parties stipulated to Southern Bell's dismissal from the action. Following a non-jury trial, the court ruled that Information Systems did not sell "telephone service," was not a "utility," and was not a "telephone company." The court entered Final Judgment in favor of Information Systems and, upon rehearing, Amended Final Judgment from which the County appealed.
The task before us is to determine whether the provision of CPE by Information Systems constitutes the sale of "telephone service" under the public service tax statute, § 166.231, Fla. Stat. (1983), and the utility tax ordinance, § 29-37, Metropolitan Dade County Code. The public service tax statute, § 166.231, Fla. Stat. (1983), which authorizes Dade County to levy the tax in question, does not define "telephone service."[1] Thus, we must resort to several well-settled rules of statutory construction to aid in determining the definition of "telephone service" as used in section 166.231, Florida Statutes (1983).
Legislative intent is the polestar of statutory construction. Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981); State v. Webb, 398 So.2d 820, 824 (Fla. 1981). Statutes should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla. 1984); Prudential Insurance Co. v. Baitinger, 452 So.2d 140, 143 (Fla.3d DCA 1984).
In determining legislative intent, the court may consider subsequent enactments of a statute as an aid to interpreting the original legislation. Speights v. State, 414 So.2d 574, 576 (Fla. 1st DCA 1982) (citing Watson v. Holland, 155 Fla. 342, 20 So.2d 388, 393 (1944), cert. denied, 325 U.S. 839, 65 S.Ct. 1408, 89 L.Ed.2d 1965 (1945)). The amendment of a statute does not necessarily indicate that the legislature intended to change the law. State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529, 531 (Fla. 1973); Ocala Breeder Sales Co. v. Division of Pari-Mutuel Wagering, Department of Business Regulation, 464 So.2d 1272, 1274 (Fla. 1st DCA 1985); Seaboard Coast Line Railroad v. O'Connor, 229 So.2d 663, 666 (Fla. 2d DCA 1969), cert. denied, 237 So.2d 754 (Fla. 1970). Statutory changes may be designed to clarify *1305 what was "doubtful and to safeguard against misapprehension as to existing law." Szabo, 286 So.2d at 531; Ocala Breeder, 464 So.2d at 1274. The timing and circumstances of an enactment may indicate that its purpose is to clarify or interpret existing law. Williams v. Hartford Accident & Indemnity Co., 382 So.2d 1216, 1220 (Fla. 1980).
The current version of the public service tax statute, § 166.231, Fla. Stat. (1985), does not include "telephone service" in the list of taxable services. The present statute, § 166.231(9), Fla. Stat. (1985), authorizes a municipality to levy a tax on the purchase of "telecommunication services" as defined in section 203.012, Florida Statutes (1985). Section 203.012 is the definitional section of chapter 203, Florida Statutes (1985), which imposes a state gross receipts tax on utility services. The definition of "gross receipts from telecommunication services" in section 203.012 expressly excludes charges for CPE leased or rented by a customer from any source. § 203.012(2)(b)1, Fla. Stat. (1985). The current version of section 203.01 is the result of an amendment by chapter 84-342, section 1, Laws of Florida, in which the legislature imposed the gross receipts tax on "telecommunication services" rather than on the "use of telephones," a change similar to the amendment of section 166.231, Florida Statutes (1983), by chapter 85-174, section 1, Laws of Florida. The preamble to chapter 84-342 announces the expansion and clarification of the legislative intent of chapter 203, in response to the divestiture of AT & T.[2]See State v. Lanier, 464 So.2d 1192 (Fla. 1985). The interrelationship of chapter 203 and section 166.231 is evident from the legislature's reference to section 203.012 as the definitional section of the operative terms used in section 166.231, Florida Statutes (1985). Statutes pertaining to the same person or thing, the same class of persons or things, or to the same or closely allied subject or object are regarded as in pari materia. Sanders v. State ex rel. Shamrock Properties, Inc., 46 So.2d 491, 495 (Fla. 1950); Lanier v. Bronson, 215 So.2d 776, 780 (Fla. 4th DCA 1968). The Supreme Court of Florida has often stated that laws should be construed in harmony with other laws relating to the same purpose, Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981); City of Coral Gables v. Board of Public Instruction, 313 So.2d 92, 95 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 14 (Fla. 1976); courts should avoid a construction which places in conflict statutes covering the same general area of law. City of Boca Raton v. Gidman, 440 So.2d 1277, 1282 (Fla. 1983). Thus, the two statutes are read in pari materia and the intent expressed in the preamble to chapter 84-342, Laws of Florida (amending ch. 203, Fla. Stat. (1983)), is imputed to section 166.231, Florida Statutes (1983). These legislative directives lead to the conclusion that the legislature intended in section 166.231 (1983), to exclude the lease of CPE from the application of the County tax.[3]
*1306 Furthermore, an interpretation of a statute that leads to an unreasonable conclusion will not be given effect. Tampa-Hillsborough County Expressway Authority v. K.E. Morris Alignment Service, Inc., 444 So.2d 926, 929 (Fla. 1983); Wakulla County, 395 So.2d at 543. Paragraph twenty of the parties' stipulation reflects that the County construes the ordinance as applicable only to CPE which was transferred from Southern Bell to Information Systems. No other CPE leased by Information Systems has been taxed, and the tax has not been imposed on CPE leased from any other entity. In light of these facts, we find that the County's interpretation of the statute and ordinance is unreasonable in that it condones taxing a select portion of CPE. Accordingly, we reject the County's interpretation of the statute.
A determination of legislative intent is appropriate when the court considers a factual situation not contemplated by the legislature. Powell v. Gessner, 231 So.2d 50, 53 (Fla. 4th DCA), aff'd, 238 So.2d 101 (Fla. 1970). It is undisputed that at the time the ordinance and statute in question were enacted, the legislature could not have contemplated the divestiture of AT & T's local telephone companies and the "unbundling" and deregulation of CPE. We agree with AT & T that the legislature could not have foreseen the development of a new industry involving CPE providers and thus could not have intended that the tax apply to a vendor which is neither a utility nor a common carrier. Cf. Radio Telephone Communications v. Southeastern Telephone Co., 170 So.2d 577 (Fla. 1964) (legislature could not have intended to regulate radio communication service where development of radio communications industry unforeseeable when statute enacted). We conclude our analysis of legislative intent by reiterating the general maxim that tax statutes are construed against the taxing power and in favor of the taxpayer, Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173, 1174 (Fla. 1979); Walter E. Heller & Co. S.E., Inc. v. Williams, 450 So.2d 521, 530 (Fla. 3d DCA 1984); Florida Savings & Loan Services, Inc. v. Department of Revenue, 443 So.2d 120, 122 (Fla. 1st DCA 1983), and hold that because Information Systems does not sell "telephone service," it is not subject to taxation under section 166.231, Florida Statutes (1983).
The County relies on Alabama Operating Co. v. City of Winter Park, 68 So.2d 601 (Fla. 1953), to support its position that the providing of CPE constitutes the sale of "telephone service" subject to the excise tax. In Alabama Operating Co., the supreme court included telephone equipment in the broad definition of "telephone service" for utility tax purposes, stating that the equipment furnished by the telephone company was part of the company's telephone service. Alabama Operating Co., 68 So.2d at 602. When Alabama Operating Co. was decided, however, only one company provided customers with both service and equipment. Until 1968, the acquisition of telephone transmission service and of telephone equipment were so intertwined that customers could not obtain one without the other. The breakup of AT & T radically changed the structure of the system. Telephone equipment is no longer sold by the company that provides transmission service, Second Computer Inquiry; it may be purchased or leased from many different sources, of which Information Systems is but one.[4] The changed *1307 structure of the telephone system renders the holding of Alabama Operating Co. inapposite to the facts before us.
Next, the County argues that the mere change in ownership of the CPE leased to customers should not affect the applicability of the excise tax. We perceive the change to encompass more than mere ownership. The evidence reveals several differences between the provision of CPE by Southern Bell and the provision of CPE by Information Systems: 1) the Public Service Commission [PSC] regulated Southern Bell's provision of CPE but does not regulate the provision by Information Systems of the same equipment; 2) Southern Bell was able to terminate transmission service when not paid for the use of CPE; Information Systems is not; 3) complaints against Southern Bell were initially heard by PSC, which could exercise power over Southern Bell; complaints against Information Systems are heard by consumer agencies and the courts; and 4) malfunctioning telephones and transmission lines were formerly repaired by Southern Bell; now the customer must locate the problem and contact the CPE provider for instrument repairs or the transmission company for line repairs. These differences demonstrate the fallacy of the County's argument.
Having determined that Information Systems does not provide "telephone service" under section 166.231, Florida Statutes (1983), we next consider whether Information Systems provides "telephone service" under the County's ordinance. § 29-37, Metropolitan Dade County Code. The ordinance states that it applies only to the extent permitted by section 166.231, Florida Statutes. § 29-37(5), Metropolitan Dade County Code. Thus, the definition of "telephone service" contained in section 166.231 defines the term even when it appears in the ordinance and, according to our holding, excludes the provision of CPE from the tax burden.
The FCC's aim of promoting competition in the telephone industry led to its ordering the divestiture of AT & T and the "unbundling" of CPE. Second Computer Inquiry. The County's application of the ordinance contravenes FCC policy. Its interpretation suppresses competition by forcing Information Systems to offset the excise tax by rendering service at a reduced cost. Our holding is designed to further the stated objectives of the FCC.
For these reasons, we hold that Information Systems does not provide "telephone service" as contemplated by section 166.231, Florida Statutes (1983), and section 29-37, Metropolitan Dade County Code, and is therefore not required to collect and remit the subject tax.
Affirmed.
NOTES
[1] Section 166.231(1)(a), Florida Statutes (1983), states:

A municipality may levy a tax on the purchase of electricity, metered or bottled gas (natural liquified petroleum gas or manufactured), water service, telephone service, and telegraph service. (emphasis supplied)
[2] The preamble of chapter 84-342, Laws of Florida, states:

WHEREAS, the Legislature finds that due to the growth of the telecommunication services industry, there is a need to expand and enlarge chapter 203, Florida Statutes, so as to impose the gross receipts tax on all telecommunication services, and to avoid discrimination involving those competitively similar, and
WHEREAS, the Federal Court ordered divestiture of American Telephone and Telegraph Company has required the State of Florida to carefully scrutinize the divestiture so as to determine gross receipts tax implications resulting therefrom, and
WHEREAS, the Legislature desires to clarify the legislative intent with regard to imposition of the gross receipts tax involving interstate use of telephone and telecommunication services, and
... .
[3] The stipulation entered into by the parties buttresses our conclusion that Information Systems does not sell "telephone service." While stipulating in paragraph twenty-three that Information Systems has sold and leased CPE since January 1, 1983, the County states in paragraph eight that Southern Bell was the only seller of "telephone service" in Dade County from the inception of the utility tax ordinance, § 29-37, Metropolitan Dade County Code, until December 31, 1983. When the two statements are read together, it becomes apparent that the County has explicitly admitted that Information Systems did not sell "telephone service" from January 1, 1983, to December 31, 1983, and implicitly admitted that Information Systems has never sold "telephone service."
[4] Other CPE providers include: Rolm Telecommunications; Northern Telecom; Atlantic Telecommunications, Inc.; National Business Communications; NORAMCO; ITT Business Communications; Corporate Telephone, Inc.; Anaconda Ericsson Information Systems; Caribbean Cellular Mobilephone; Commercial Video Company; Commutronics Resources; Data Telephone Company, Inc.; GE Telecommunications Systems; Jarvis Corporation; Mitel Electronic PABX Systems; NAC Telephones, Inc.; RCA Telephone Systems; Panasonic Telephone Systems; Trans-American Telephone Systems; United Technologies Communications Company; Radio Shack or the Tandy Corporation; Sears; General Telephone & Electronics, Inc. or General Telephone and Electronics Communications Systems; and Southern Bell Advanced Systems Division.